Argued November 18, 1895; decided February 3, 1896.

## EX PARTE MASON.

### STATE EX REL. *v.* MASON.

[43 Pac. 651.]

1. DISBARMENT OF ATTORNEY — "MORAL TURPITUDE" * — CODE, § 1047.—
The publication of a libel is a "misdemeanor involving moral turpitude" within the meaning of section 1047 of Hill's Code, authorizing the removal or suspension of an attorney on his conviction of a felony or "misdemeanor involving moral turpitude."

*In addition to the authorities cited in this opinion the following will be found in point on the question of moral turpitude: *Klumph* v. *Dunn*, 66 Pa. St. 141 (5 Am. Rep. 355) where the court held that to charge a married man with having committed adultery was imputing to him the commission of an offense that involved moral turpitude; *Hoag* v. *Hatch*, 23 Conn. 585, where a charge of having distributed money and rum to influence voters at an election was said to involve moral turpitude; *McCuen* v. *Ludlum*, 17 N. J. Law, 12, holding that to charge a postmaster with having broken open letters in the postoffice was not imputing any moral delinquency; and *Redway* v. *Gray*, 31 Vt. at page 298, where it is said that the offense of larceny does not necessarily imply moral turpitude.—REPORTER.

2. NATURE OF DISBARMENT PROCEEDINGS.—Proceedings against an attorney under section 1047 of Hill's Code are, so to speak, *quasi* criminal in their nature—that is, the penalty is fixed, and must follow a finding of guilty.

3. DISBARMENT—DISCRETION OF COURT.—Although, under section 1047, Hill's Code, the record of a conviction of an attorney for a felony or a misdemeanor involving moral turpitude is conclusive evidence of his guilt, yet the court may, at its option, examine the facts in order to determine the extent or severity of the punishment.

This is a proceeding to disbar an attorney, instituted by the State upon the relation of the members of the Grievance Committee of the Oregon State Bar Association. The facts are that O. P. Mason, a licensed attorney, was indicted, tried, and convicted of the crime of libel, upon proof of the publication of defamatory matter in a newspaper published at Portland, Oregon, known as the Sunday Mercury, while he was its editor. Whereupon the relators filed an information against him in this court alleging such conviction, and that the offense of which he was so convicted is a "misdemeanor involving moral turpitude," and pray a judgment of removal against the accused. The defendant, upon being cited to appear, filed his answer to the information, in which he denies that the misdemeanor of which he was convicted involved moral turpitude, and alleges that he was found guilty thereof by construction of law only, which renders the manager, editor, or owner of a newspaper criminally liable for the publication of a libel, whether he wrote the article or not, or had any knowledge of its publication; that he did not write the alleged libelous article, or see it, or know of its publication until after the newspaper was in circulation. The reply having put in

issue the allegations of new matter contained in the answer, the cause was referred to C. H. Sholes, who took and reported the evidence to this court, from which it appears that Mason, upon the argument of a demurrer to said indictment, stated to the court that he had seen the article before it was published, but did not consider it libelous, nor did he at that time so regard it; that at the trial of said criminal action, as a witness in his own behalf, he testified that the statement so made by him to the court was erroneous; that at the time he argued the demurrer he thought he had seen and corrected the proof of the article, but upon examining the original manu-script he found he had never seen it, nor did he know of its publication until after the newspaper was in circulation. The foreman of the Sunday Mercury testified that he was acquainted with and knew Mason's handwriting; that he set the type for a part of the article complained of, and that the defendant neither wrote it nor corrected the proof thereof. No evidence was introduced to contradict Mason's testimony, and hence we must conclude that it is true, and also that he was convicted by reason of his carelessness as editor, in suffering a libelous article to be published in a newspaper of which he was editor: State v. Mason, 26 Or. 273 ( 46 Am. St. Rep. 629, 26 L. R. A. 779, 38 Pac. 130 ). The statute provides that an attorney may be removed or suspended upon his being convicted of a misdemeanor involving moral turpitude, in which case the record of his conviction is conclusive evidence: Hill's Code, § 1047.

For the motion to disbar there was an oral argument by *Mr. Cicero M. Idleman*, attorney-general, and *Mr. Frank A. E. Starr*.

*Contra* there was an oral argument by *Mr. Oliver P. Mason*, in *pro. per.*

Per Curiam. 1. The answer impliedly admits the conviction, the record of which is made a part of the evidence submitted, and this being conclusive thereof, necessitates an interpretation of the term "moral turpitude." Mr. Newell, in his work on Defamation, Slander, and Libel, § 12, in speaking of the term, says: "Moral turpitude may therefore be defined as an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." In actions of libel and slander, moral turpitude has been held to have been involved by imputing to another the commission of the following crimes: Abortion — *Filber* v. *Dauterman*, 26 Wis. 518; *Bissell* v. *Cornell*, 24 Wend. 354; *Widrig* v. *Oyer*, 13 Johns. 124. Adultery — *Ranger* v. *Goodrich*, 17 Wis. 80. Bribery — *Hoag* v. *Hatch*, 23 Conn. 585. Burglary — *Alfele* v. *Wright*, 17 Ohio St. 238 (93 Am. Dec. 615). Forgery — *Alexander* v. *Alexander*, 9 Wend. 140. Fornication — *Pollard* v. *Lyon*, 91 U. S. 225. Keeping a Bawdy-house — *Martin* v. *Stillwell*, 13 Johns. 274 (7 Am. Dec. 374). Larceny — *Redway* v. *Gray*, 31 Vt. 292; *Perdue* v. *Burnett*, Minor (Ala.), 138. Libel — *Andres* v. *Koppenheafer*, 3 Serg. and R. 254 (8 Am. Dec. 647).

Removing Boundary Marks— *Young* v. *Miller*, 3 Hill, 21; *Dial* v. *Holter*, 6 Ohio St. 228. It has been assumed, also, by way of argument, that moral turpitude is not involved in the commission of the folfowing misdemeanors: Assault and battery, breaches of the peace, forcible entry and detainer, trespass, and sales of intoxicating liquor without a license: *Redway* v. *Gray*, 31 Vt. 292; *Smith* v. *Smith*, 2 Sneed, 473; *Andres* v. *Koppenheafer*, 3 Serg. and R. 254 (8 Am. Dec. 647). No unintentional wrong or improper act, innocent in purpose, can involve moral turpitude: *Pullman Palace Car Company* v. *Central Transportation Company*, 65 Fed. 158. The term lacks precision, and necessitates the examination of the works of moral and ethical authors, rather than the textbooks of legal writers, to ascertain whether a given case falls within or without the rule: *Skinner* v. *White*, 1 Dev. and B. 471; *Birch* v. *Benton*, 26 Mo. 153. In *Parkersburg* v. *Brown*, 106 U. S. 487, (1 Sup. Ct. 442,) Mr. Justice BLATCHFORD, commenting upon an *ultra vires* contract, says: "The illegality of that contract does not arise from any moral turpitude. The property was transferred under a contract which was merely *malum prohibitum*, and where the city was the principal offender. In such a case the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received." So too in *Spring Company* v. *Knowlton*, 103 U. S. 49, Mr. Justice WOODS, commenting upon a similar contract, says: "It is to be observed that the making of the ille-

gal contract was *malum prohibitum* and not *malum in se*. There is no moral turpitude in such a contract, nor is it of itself fraudulent, however much it may afford facilities for fraud." "This element of moral turpitude," says Lowrie, J., in *Beck* v. *Stitzel*, 21 Pa. St. 522, "is necessarily adaptive; for it is itself defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community." An assault and battery is a crime *malum in se*, the commission of which rarely involves moral turpitude: *McCuen* v. *Ludlum*, 17 N. J. Law, 12. It is apparent from the foregoing authorities that the term is vague, and that "moral turpitude" is involved only when so considered by the state of the public morals, and hence it might be applied in some sections and denied in others, thus rendering a satisfactory definition of the term difficult if not impossible. Inability to properly define the term, however, does not preclude us from saying that it is, and of necessity must be, involved in the wilful publication of a libel. The case of *Andres* v. *Koppenheafer*, 3 Serg. and R. 254, ( 8 Am. Dec. 647,) was an action for slander, founded upon the following language: "What is a woman that makes a libel? She is a dirty creature, and that is you. You have made a libel, and I will prove it with my whole estate." It was held that the crime of libel imputed to the plaintiff involved moral turpitude, Tilghman, C. J., saying: "The man who wantonly, maliciously, and falsely traduces the character of his neighbor, is no better than a felon;

he endeavors to rob him of that in comparison with which gold and diamonds are but dross." We think there can be no doubt that the wilful publication of a malicious libel by the manager of a newspaper, when made either to vent his spleen upon the object of his wrath, or to cater to the perverted taste of a small portion of the public, clearly involves moral turpitude, and manifests on the part of the libeler a depraved disposition and a malignant purpose.

2. The statute prescribes and enumerates the causes which may subject an attorney to the penalty of removal or suspension. Hill's Code, § 1047, provides that "An attorney may be removed or suspended by the supreme court for either of the following causes, arising after his admission to practice: 1. Upon his being convicted of any felony or of a misdemeanor involving moral turpitude, in either of which cases the record of his conviction is conclusive evidence; 2. For a wilful disobedience or violation of the order of a court requiring him to do or forbear an act connected with or in the course of his profession; 3. For being guilty of any wilful deceit or misconduct in his profession; 4. For a wilful violation of any of the provisions of section 1038." This last section prescribes the duties of an attorney. Here is a statutory regulation of the power of the court to strike an attorney's name from the roll. The power itself exists inherently, and independent of the statute, and "is necessary for the protection of the court, the proper administration of

justice, the dignity and purity of the profession, and
for the public good and the protection of clients":
Weeks on Attorneys, 154. A proceeding for disbar-
ment is *quasi* criminal in its nature, *(Thomas* v.
*State*, 58 Ala. 365; *State* v. *Tunstall*, 51 Texas, 81,)
and the statute has fixed the penalty at removal or
suspension. While the court must necessarily have
a wide discretion in fixing the extent of the punish-
ment to be administered, yet conviction in this court
in a proceeding like this must be followed by the
penalty, as in ordinary criminal cases in other courts
after a verdict of guilty by the jury.

3. Now, as regards the case at bar, the defend-
ant has been convicted of a misdemeanor, and, as
has been shown, one involving moral turpitude.
The record of his conviction is made conclusive evi-
dence thereof, so that the production of such rec-
ord established his guilt in the disbarment proceed-
ings. The court may, however, go behind the rec-
ord for the purpose of determining upon the extent
or severity of the punishment to be administered.
To illustrate, we quote from Lord Esher, M. R. in
*Re Weare*, 62 Law J. (N. S.), 601, a recent case
from England: "Where a man has been convicted
of a criminal offense, that, *prima facie* at all events,
makes him a person unfit to be a member of an
honorable profession. You must not carry that to
the length of saying that wherever he has com-
mitted a criminal offence the court is bound to
strike him off for that. * * * Baron Pollock
held, and Mr. Justice Manisty held, that although

his being convicted of a crime *prima facie* made him liable to be struck off the rolls, yet the court still had a discretion, and must inquire into what kind of crime it was of which he had been convicted, and that the court might punish him to a less extent than if he had not been so punished. As to striking off the rolls, I have no doubt myself that the court might say, 'Under these circumstances we shall do no more than admonish him'; or the court might say, 'We shall do no more than admonish him and make him pay the costs of the application'; or the court might suspend him, or the court might strike him off the rolls. The discretion of the court in each particular case is absolute." In that case the court was apparently possessed of a wider discretion than we are here, as it extended to an admonishment of the attorney. Here the penalty is removal or suspension, with full discretion as to which shall be adopted, and, if the latter, then as to the duration and limitation thereof. So we look behind the record here for the purpose only of determining the punishment that should be inflicted. The fact that the defendant has been convicted in the criminal action, and suffered the penalty thereto attached, and that, in amelioration of the crime for which he was convicted, he has shown that he was only nominally editor of the Sunday Mercury, which contained the libelous publication, and was perhaps not cognizant of the contents or insertion of the article until after that number of the paper had been issued, has had large influence with us in softening the penalty incurred. Yet the character of the

newspaper with which he allowed his name to be associated was calculated to warn him that he might at any time be subjected to just such a prosecution, and is not such as to commend him for the imposition of a punishment merely nominal. The judgment of the court will therefore be, that he be suspended from practicing as an attorney in all the courts of the state for the term of six months; that the state recover of the defendant the costs and expenses of this proceeding, and that the same be paid by the state in the first instance.

SENTENCE OF SUSPENSION.