Submitted on record May 2, accused suspended September 10, 1973

In re Complaint as to the Conduct of
PATRICK M. McMAHON, *Accused.*
513 P2d 796

No appearances.

PER CURIAM.

The accused has been charged by the Oregon State Bar with unethical conduct while serving as a deputy city attorney of the City of Portland. In each of the first two charges the Bar contends that the accused accepted money from a bail bondsman pursuant to an agreement to use the accused's position to secure for a defendant a favorable disposition by the

Municipal Court of the City of Portland of a case then pending before it. The Trial Committee and the Board of Governors unanimously found the accused not guilty of these charges. This court also finds the charges not proved by clear and convincing evidence and it concurs with the statement of the Trial Committee which said it was unable to give credence to many statements of the witnesses which were produced.

The remaining charge was that the accused accepted compensation and gratuities from the bail bondsman when the accused knew or should have known that the bail bondsman's interest could conflict with that of the City of Portland. The Trial Committee and the Board of Governors unanimously (all of those participating) found the accused guilty of this charge. The Trial Committee recommended a public reprimand. Six members of the Board of Governors recommended a six-month suspension; four members recommended a public reprimand. Neither the accused nor the Bar made any appearance in this court complaining of the recommendations of the Board of Governors. As a result, this court has not had the benefit of either the briefs or the arguments of counsel. The matter is before us on the voluminous transcript, the exhibits, and the recommendations of the Trial Committee and the Board of Governors.

The testimony proved that the accused received small favors from the bail bondsman, such as a name plate, small amounts of liquor, and entertainment. However, in addition, the evidence shows also that the accused borrowed money from the bail bondsman at no interest; that he lived in the bail bondsman's house under an agreement to pay rent, pursuant to which

agreement he gave the bail bondsman a note for his delinquency after he knew that his conduct with the bail bondsman was in question; and that he performed legal services for the bail bondsman, part of which was in connection with the bail bond business and for which he was paid cash on an irregular basis without the rendering of any statements or the giving of any receipts for payment.

The record also indicates that at times the interest of a bail bondsman and the interest of the city can be in conflict. Applications are made by the city to forfeit bail bonds for non-appearance of bailees. Applications are also made by bail bondsmen for the remission of such forfeitures either wholly or in part if the bailees subsequently make an appearance. The following is the testimony of the accused relating to such matters:

"Q. * * * * *.

"Did you consider yourself to be on a sort of retainer to Mr. Portnoy?

"A. Heavens no.

"Q. Would you look at page 68 of your deposition? And let me read, starting at line 20 of page 68, over on the top of page 69, and I'll ask you if I asked these questions and if you gave these answers?

" 'Q. Would he give you money for a specific job, or would he just give you money from time to time and you would do work for him from time to time?

" 'A. Yah, I believe that is a pretty accurate statement.

" 'Q. More that he would give money from time to time and you did work from time to time?

" 'A. Sort of like a retainer.'

"Did I ask those questions and did you give those answers?

"A. Certainly did.

"Q. Were those answers truthful?

"A. They are truthful, but they don't portray the situation that prevailed.

"Q. Do you have an explanation for the testimony?

"A. Well, may I give an example? For example, Ron Portnoy worked usually at night. He would get there, oh, probably noon or 1:00 o'clock in the afternoon, and he would work on through the night into the wee hours of the morning. His mother worked from 8:00 o'clock until 5:00, regular hours, and on a couple of occasions she would call me up and say, 'Pat, can you stop by on your lunch hour, I want you to look at a deed' or 'I want you to look at this or help me with this,' and I would. And she would then tell Ron, Pat did this and Pat did that, and the next time I would see him, he would give me a ten-dollar bill or twenty-dollar bill, or twenty-five dollars. It's not that I looked at the deed or helped him prepare the deed and was paid immediately, that is not the case.

"Q. Now while we are on the matter of your deposition, you testified previously today that on two occasions when you accompanied Mr. Portnoy and a request was made of a city judge to reinstate all or a portion of a forfeiture of bail. I believe your testimony was that you did not affirmatively make representations to the court to recommending it from the City's point of view?

"A. I don't know if that's my testimony—if that's what I said earlier. I know for a fact that they would ask, 'Does the City have any objection?' And I would reply, 'No.' They would ask, 'Is there any expense involved to the City?' And I never knew if there was any expense and I would simply say, 'I don't know.'

"But unless the City had employed someone to go look for this particular fugitive, as you would call them, there couldn't be any expense."

It is clear that the accused's conduct was in violation of the Code of Professional Responsibility of the Oregon State Bar. Canon 5 of the Code provides that a lawyer should exercise independent professional judgment on behalf of a client. Pursuant to such Canon, Disciplinary Rule 5-105 (A) states:

"A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, * * *."

Ethical Consideration 5-14 is applicable to the Rule and is stated thusly:

"Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant." (Footnotes omitted.)

Canon 6 of the Code of Responsibility of the American Bar Association is similar to Canon 5 of the Code of Professional Responsibility of the Oregon State Bar, and the Ethical Consideration applicable thereto is stated as follows:

"The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desire of third persons should be permitted to dilute his loyalty to his client." (Footnote omitted.)

In this court's opinion the accused's employment by the bail bondsman could not help but impair his independent professional judgment upon behalf of the City of Portland and was, therefore, unethical.

In addition, the accused was in violation of Oregon State Bar Disciplinary Rule 8-101 (A)(3), which states:

> "(A) A lawyer who holds public office shall not:
>
> "* * * * *.
>
> "(3) Accept any thing of value from any person when the lawyer knows or it is obvious that the offer is for the purpose of influencing his action as a public official."

No one can reasonably claim that it could be anticipated the bail bondsman was motivated entirely by altruistic concern, friendship, or the accused's welfare in extending the favors to the accused. The bail bondsman had business with the City of Portland which was of vital financial interest to him concerning which the accused represented the City.

The situation which existed is not novel, and it was one into which it was easy for an unthinking lawyer to stumble. However, it is one which cannot be tolerated. The accused is suspended from the practice of law for a period of one year.