Submitted on briefs February 25, petition allowed April 10, 1975

IN THE MATTER OF THE APPLICATION OF
## GILBERT WILLIAM GIMBEL,
FOR ADMISSION TO PRACTICE LAW IN THE STATE OF OREGON.
533 P2d 810

*Mervin W. Brink,* Hillsboro, filed the briefs for petitioner. With him on the briefs were Brink & Moore, Hillsboro.

*Rodney C. Adams,* of Thompson, Adams & Lund, Beaverton, and Charles J. McClure, Tigard, filed a brief for Oregon State Bar.

PER CURIAM.

This is a petition for review of a denial of admission to the Oregon State Bar. The petitioner alleges that he passed the student bar examination in July 1973, but was then notified that this court had

approved the recommendation of the Oregon State Bar that his admission be denied. The petition was then referred for hearing before a trial committee of the Bar.

For the purposes of that hearing the Bar then filed a Statement of Objections on the ground that the petitioner "has not shown, to the satisfaction of the Board of Bar Examiners or Board of Governors, that he has the moral character or general fitness required for admission. * * *" More specifically, it was alleged (1) that in his written application for admission prior to taking the examinations in 1971 and 1973 and in answering questions inquiring whether he had been arrested for violation of any law, the petitioner had failed to disclose an arrest and detention in Omaha, Nebraska, in 1964 for an NSF check; (2) that upon oral interview by members of the Board of Bar Examiners in May 1973 he "failed to reveal said arrest and detention, although given adequate opportunity to do so"; and (3) that in the conduct of his practice as a certified public accountant he had violated the rules of ethics of that profession "relating to solicitation, competitive bidding and professional attainments."

After a two-day hearing, the trial committee made unanimous findings and recommendations in favor of the petitioner. Petitioner asks that we affirm those findings and recommendations.

An applicant for admission to the bar of this state has the burden of proving that he is "a person of good moral character."[1] In petitioning this court

---

[1] ORS 9.220 provides that:

"An applicant for admission as attorney must apply to the Supreme Court and show that he or she:
"* * * * *
"(2) Is a person of good moral character, which may be proved by any evidence satisfactory to the court.
"* * * * *"

for the privilege to practice law in Oregon Mr. Gimbel admits his past misconduct and pleads reformation of character. As we said in *In re Bernard Jolles,* 235 Or 262, 275, 383 P2d 388 (1963):

"* * * Reformation is a very difficult matter for a petitioner to prove and for us to judge because evidence of morality is not ordinarily adducible in positive form. Generally, proof must be made through the appraisal of those with whom the petitioner has worked and lived and who are in a position to see how he makes choices calling for moral decisions. * * *"

We have carefully reviewed the testimony of the 15 witnesses who appeared before the trial committee, including the testimony of the petitioner himself.

Mr. Gimbel testified that during the years 1964 to 1968 he was an alcoholic and was arrested on numerous occasions for offenses related to intoxication. In his applications for admission to the bar he listed most, if not all, of those arrests, but did not list the arrest for the NSF check in 1964 or 1965. He testified that during the period when he was drinking heavily he wrote some NSF checks, including this one. He said that at the time his father was supporting him and that when he wrote such a check he would ask that it be held until he could "cover it"; that all of such checks, including the one for which he was arrested, were "covered" and that no criminal charges were filed for that check.

Mr. Gimbel testified that at the time when he listed the other arrests in his application for admission he had forgotten about the NSF check arrest and that when he was asked about it at the time of his interview by three members of the Board of Bar Examiners he was surprised, but then remembered about it.

Two of the three members of the Board of Bar Examiners who interviewed Mr. Gimbel testified that they were of the opinion that he had deliberately concealed the NSF check arrest both in his application for admission and in his interview and that his surprise was in being "caught." The third member was not sure.

The trial committee, after hearing the testimony, found unanimously that petitioner's failure to disclose that arrest "was not intentional or made for the purpose of deceiving the Bar," particularly in view of the fact that he had listed numerous other arrests and had authorized an investigation of such matters.

The charges of misconduct in his practice as a certified public accountant involved a "letter of warning" from the State Board of Accounting as a result of complaints that Mr. Gimbel had engaged in improper solicitation of business. It appears that when Mr. Gimbel opened his own office as a certified public accountant in Hillsboro he wrote letters to several attorneys offering his services as a consultant on tax matters and that he also talked to three persons who either then were, or had been, clients of other accountants. No formal hearing was held and no formal charges were filed.

After reviewing the testimony on this subject, including the explanation by Mr. Gimbel, we agree with the findings of the trial committee that these violations, if not of a somewhat technical nature, were done innocently and were not of such a nature as to demonstrate a lack of moral character.

After reviewing the record we can understand why the trial committee was also impressed with the quality of the testimony of the witnesses who testified on his behalf. These included witnesses who testified to his complete "cure" from alcoholism and his total

abstinence from the use of intoxicating beverages. They also included businessmen, as well as attorneys, who had used Mr. Gimbel's services as a certified public accountant for themselves and their clients. These witnesses testified that they found Mr. Gimbel to be not only "absolutely honest," but also highly ethical in his advice on tax matters and to possess such a character that they would trust him with their own money, despite knowledge of his previous record.

Another witness, an accountant, testified that in a community the size of Hillsboro, where Mr. Gimbel has lived since 1969, all accountants know each other "pretty well"; that the reputation of Mr. Gimbel for truth and veracity in the community is "very good"; and that despite knowledge of the NSF check arrest and "letter of warning," he also would trust Mr. Gimbel with his own money.

In addition, his banker also testified that Mr. Gimbel has had no NSF checks in any of his three checking accounts. It also appears from the testimony that for the past several years Mr. Gimbel has been active in raising funds on behalf of one of the community service clubs, of which he has been treasurer.

It is also of some significance that Mr. Gimbel's former wife, from whom he is divorced, testified that his "moral character and integrity" was "the highest."

After reviewing the record, including the "appraisal of those with whom the petitioner has lived and worked," as in *Jolles,* we agree with the finding and conclusion by the trial committee that petitioner has satisfied the burden of proof that he is now a person of good moral character and general fitness for admission to practice law in the State of Oregon.

Having passed the bar examination Mr. Gimbel is eligible for admission to the Oregon State Bar upon filing the prescribed oath.