Argued April 3, accused reprimanded April 17, 1975

In re Complaint as to the Conduct of
## DONALD A. W. PIPER, *Accused.*
534 P2d 159

*Carl M. Brophy,* Medford, argued the cause and filed the briefs for petitioner.

*Donald H. Coulter,* Grants Pass, argued the cause for the Oregon State Bar and Commission for Judicial Fitness.

PER CURIAM.

This is a proceeding to discipline a circuit judge for misconduct. It arises from two sources: (1) the findings and conclusions of the Commission on Judicial Fitness based upon a complaint issued by it, with the recommendation that the accused be suspended from office for three months, and (2) the findings and conclusions of a Trial Board of the Oregon State Bar based upon a complaint issued by it, with the recommendation that the accused be suspended from the practice of law for two months.

The two complaints alleged substantially the same acts of misconduct. A single hearing was held on both complaints before three attorneys, who were appointed both by the Commission on Judicial Fitness as masters to hear testimony on its behalf under its rules of procedure[1] and by the Board of Governors of the Oregon State Bar as a Trial Board under ORS 9.560.[2]

---

[1] Rules 13 and 18 of the Rules of Procedure of the Commission on Judicial Fitness, as adopted by it pursuant to ORS 1.420, provide for the appointment of three qualified persons to act as masters to hear the testimony on complaints issued by the Commission and to report to it their recommended findings of fact.

[2] ORS 9.560 provides for a hearing by a Trial Board ap-

The facts are undisputed, except upon the issue of knowledge and willfulness. The accused became a circuit judge in Klamath County on August 9, 1961. At that time he had been a practicing lawyer in Klamath Falls for several years. He then referred to other lawyers all of his pending litigation except for four decedents' estates and one guardianship estate.

The accused testified that he "knew that a judge was not supposed to practice law," but that he "checked some authorities" and "made a conscious decision to go ahead and finish up the work that I had in progress in these estates." He did so after he "reached the conclusion that it was not improper to finish up routine office work * * * that didn't require appearances in court, * * *." He recognized that the "doing of such acts is the practice of law," but said that he "considered that this was a permissible exception to the general prohibition against practicing law."[3]

As matters then developed, however, the "finishing up" of this "routine office work" continued until October 18, 1971. During that period of over 10 years the accused prepared and filed with the probate court such documents as inventories and appraisements, accountings, affidavits, notices and receipts in three estates. He also prepared and filed State of Oregon income tax returns for the years 1961 to 1967, inclusive, as well as Oregon Inheritance Tax Returns, in one

pointed by the Board of Governors of the Oregon State Bar in all cases involving disbarment, suspension or reprimand of lawyers.

[3] The "authority" checked by the accused was apparently a statement in 30A Am Jur 32, Judges § 52, that "Some state statutes, * * * permit a judge to finish any business undertaken by him in federal court prior to his election or appointment to a state court."

ORS 1.220 expressly provides that "* * * no judicial officer shall * * * act as attorney in any suit, action or proceeding with or without hire, in any court or otherwise, other than as in this section allowed * * *."

estate, including the preparation and submission of an order and notice of Determination of Inheritance Tax (signed by another judge) and made arrangements for obtaining inheritance tax clearance in another estate. He also prepared and submitted two petitions and orders for allowance of expenses in another estate (signed by another judge) and prepared and submitted a petition for allowance of a fee of $50 to himself for preparing tax returns in another estate, as well as a proposed order approving his final accounting in that same estate, a proposed order closing another estate, and a proposed decree of distribution in a third estate (all signed by another judge).

In addition, in two of these estates the accused continued to receive payments for services as the attorney in those estates from time to time over a period from December 1961 to September 1968 and totaling over $4,000. These fees were in accordance with what was then the minimum fee schedule of the Oregon State Bar.

It was also found by the Trial Board that "No person or estate, or anyone interested therein, was injured in any manner by the actions of the accused in the conduct described in the Bar's complaint."

Because the constitutional and statutory provisions for proceedings by the Commission on Judicial Fitness for the discipline of judges are different from the statutory provisions for proceedings by the Oregon State Bar for the discipline of lawyers, we shall consider them separately.

I. *Constitutional and statutory provisions for discipline of judges.*

This is the first proceeding for the discipline of a judge to be brought to this court under provisions of Article VII, § 8, of the Constitution of Oregon,

which was adopted by vote of the people in 1968 and which provides as follows:

"Section 8 *Removal of Judges*

"(1) In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be *removed* from his judicial office by the Supreme Court for:

"(a) Conviction in a court of this or any other state, or of the United States, of a crime punishable as a felony or a crime involving moral turpitude; or

"(b) *Wilful misconduct in a judicial office involving moral turpitude;* or

"(c) Wilful or persistent failure to perform judicial duties; or

"(d) Habitual drunkenness or illegal use of narcotic drugs.

"(2) Notwithstanding section 6 of this Article, the methods provided in this section and in section 18, Article II of this Constitution, are *the exclusive methods of removal of a judge from judicial office.*" (Emphasis added)

Because the Commission on Judicial Fitness has recommended the suspension, rather than the removal, of the accused and because of the question whether adequate grounds for either removal or suspension have been proved in this case, the legislative history of this constitutional provision and of the related statutes becomes important.

A. *Legislative history of Article VII, § 8, and related statutes.*

The adoption of Article VII, § 8, was the result of a report and recommendation in December 1966 by the Judicial Council of Oregon,[①] in keeping with what was then described as "the deepening concern

---

[①] The Judicial Council of Oregon, as then constituted, included representatives of the State Supreme, Circuit, District and Municipal Courts, as well as lawyers and five public mem-

over the lack of any realistic method of dealing with judicial misconduct."⑤ It was adopted, however, only after substantial changes were made by the 1967 Oregon Legislature before submitting the proposal for approval by the voters at the 1968 general election.

The proposal by the Judicial Council, introduced as Senate Joint Resolution 9, would have expressly provided that a judge may be "suspended or censured," as well as removed, for any "conduct that brings the judicial office into disrepute" including but not limited to the specific grounds stated. One such specific ground was "wilful misconduct in a judicial office."⑥

In hearings before the Senate Judiciary Commit-

---

bers appointed by the Governor. It was abolished by Oregon Laws 1971, ch 311, p 450, effective June 30, 1971.

⑤ Justice William M. McAllister (then Chief Justice of this court) in an address to the City Club of Portland on January 20, 1967. Portland City Club Bulletin 189 at 190 (1968).

At that time the only means available for the removal of either a dishonest or an incompetent judge was by recall (Oregon Constitution, Art II, § 18), impeachment proceedings in the legislature (Oregon Constitution, Art VII (original), § 20), or by trial "in the same manner as criminal offenses," a procedure available for the removal of a "public officer" (Oregon Constitution, Art VII (amended), § 6).

⑥ Both the 1966 report of the Judicial Council and SJR 9, as introduced, proposed the following amendment to the Oregon Constitution:

"SECTION 8. (1) In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be *censured, or suspended* or removed from his judicial office by the Supreme Court *for conduct that brings judicial office into disrepute, including but not limited to:*

"(a) Conviction in a court of this or any other state, or of the United States, of a crime punishable as a felony or a crime involving moral turpitude; or

"(b) *Wilful misconduct in a judicial office,* occurring not more than six years prior to the commencement of his current term; or

"(c) Failure to perform judicial duties; or

"(d) Habitual intemperance.

"(2) Notwithstanding section 6 of this Article, the meth-

tee, however, various amendments were proposed,[7] after which that committee deleted provisions for suspension or censure, as well as the general reference to "conduct that brings judicial office into disrepute," and omitted the entire provision relating to "wilful misconduct in a judicial office," among other changes.[8]

Senate Joint Resolution 9, as thus amended, was then passed by the Senate. The measure was also passed by the House, which restored the provision relating to "wilful misconduct in a judicial office," but limited its application to misconduct involving "moral turpitude," after considerable discussion of the meaning of that term.[9] Senate Joint Resolution 9 was then submitted for approval by the voters at the general

ods provided in this section and in section 18, Article II of this Constitution, are the exclusive methods of removal of a judge from judicial office.

"* * * * *." ( Emphasis added)

[7] Minutes, Senate Judicial Committee, March 13, pp 1-4, and March 22, pp 3-4, 1967.

[8] See Senate Judiciary Committee Report, March 22 and April 17, 1967, and Senate Amendments to SJR 9, by Committee on Judiciary, March 24, 1967.

[9] See House Committee on Judiciary Report, April 17, 1967, and House Amendments to SJR 9 by Committee on Judiciary, April 18, 1967.

At a hearing on April 12, 1967, before the House Judiciary Committee on SJR 9, the representative of the Judicial Council who appeared in support of it was asked to define "moral turpitude" and responded that "they would have to go to case law," and that "wilful misconduct in a judicial office * * * obviously contemplated bad faith."

In further discussion Chief Justice Perry, also appearing on behalf of SJR 9, stated, according to the minutes of that meeting, that:

"* * * He would construe 'wilful misconduct' as being limited to the duties as a judge, such as acts like accepting bribes. He believes judges should be as responsible to requirements of morality and decency in judicial work as any other individual. * * *"

"* * * * *

election in November 1968 and became effective on December 4, 1968.

That amendment to Article VII, § 8, of the Oregon Constitution was implemented by the adoption by the 1967 Oregon Legislature of ORS 1.410 ff, providing for the establishment of the Commission on Judicial Fitness (Oregon Laws 1967, ch 294). In 1969 that commission undertook the performance of its duties.

In 1971 the Oregon legislature amended ORS 1.420 and 1.430, to provide that the Oregon Supreme Court may "suspend or censure" a judge for misconduct and that upon an order of suspension the judge would be "suspended from office for the period specified in the order and his salary shall cease, if so ordered," but that "suspension does not create a vacancy in the office of judge during the period of suspension."⑩ The statute did not provide any specific grounds for "suspension or censure."

"In regard to moral turpitude, he stated a case involving income tax where there was failure to file would not mean moral turpitude. However, wilful misrepresentation of income where you have a knowledgeable fact would involve moral turpitude." Minutes, House Committee on Judiciary, April 12, 1967, pp 1-3.

The term "moral turpitude" was the subject of further discussion at a hearing on April 14, 1967, according to the minutes of that committee. Minutes, House Committee on Judiciary, April 14, 1967, pp 9-10.

⑩ This statute, as Senate Bill 711, was adopted after it was called to the attention of the Senate Judiciary Committee that, according to a report by the Commission on Judicial Fitness dated March 2, 1971, it had "no power to recommend censure or suspension of judges, but could only recommend removal for the offending judge." Minutes, Senate Judiciary Committee, April 7, 1971, p 14.

The First Biennial Report of the Commission to the legislature, dated March 2, 1971, also reviewed its work for the years 1969 and 1970, during which it received 56 written complaints, mostly involving "claims of erroneous judgment about a specific point of law or specific fact issue re legislation," thus involving matters for appeal, rather than matters within the jurisdiction of the the Commission. Eight were still pending investigation. In two

B. *Application to this case of constitutional provision and related statutes.*

■ At the time of the oral argument in this case the attorney for the Commission on Judicial Fitness conceded that although it has recommended the suspension of the accused for a period of three months, rather than his permanent removal from office, the Commission must nevertheless prove that the accused has been guilty of one of the specific grounds for removal as stated in Article VII, § 8.[⑩]

We agree with that conclusion. As previously noted, ORS 1.420 and 1.430, as amended in 1971, pro-

cases proceedings were terminated by resignation or by defeat on re-election. In other cases, which were "not gross enough" to warrant removal from office, the Commission had been able "to minimize the repetition of such conduct as the result of informal conference with the judge involved."

See also Minutes, Senate Judiciary Committee, May 7, 1971, p 5, and Appendix L, which is a letter from Robert W. Chandler, a member and former chairman of the Commission, which pointed out that "censure or suspension was possible under the original bill drawn by the Judicial Council"; that most cases would not justify the "extreme step of removal from office," but that there were some cases in which the Commission "might have been willing to vote censure or suspension, had that choice been open to it."

This is in accord with the report of the Judicial Council of Oregon, December 1, 1966, p 13, as follows:

"More serious than the lack of practically operable removal procedures is the non-existence of authority to discipline short of removal. In many instances it might be highly beneficial to the public interest and the administration of justice to bring an errant judge up short with appropriate disciplinary measures such as reprimands or temporary suspension from office. But in Oregon, at the present, the judge who develops bad habits such as tardiness, laziness, overindulgence in alcohol and the like cannot effectively be disciplined with a view to correction."

⑩ To the same effect, the Rules of Procedure of the Commission limit proceedings instituted by it to those based upon information that the misconduct of a judge has been such as to fall within the specific provisions of Article VII, § 8.

vide no separate grounds for suspension. And although ORS 1.430(3) provides that upon suspension the salary of a judge "shall cease, if so ordered," it is provided by Article VII, § 1 (amended), of the Oregon Constitution that the compensation of judges "shall not be diminished during the term for which they are elected." That requirement cannot be modified by statute, but only by constitutional provision, such as by the provisions of Article VII, § 8, for removal of judges for the grounds specified in that section.

The Commission on Judicial Fitness, neither in its complaint nor in its findings, conclusions and recommendation, has charged or found the accused to be guilty of "wilful misconduct in a judicial office involving moral turpitude"—the only specific ground for removal of a judge stated in Article VII, § 8, that could have any possible application to the facts of this case.

Again, it was conceded on oral argument by the attorney for the Commission that in order to sustain its recommendations this court must find that the conduct of the accused was not only "wilful miscon-

---

Thus, Rule 9(a) provides as follows:

"The Commission, upon receiving information indicating that a judge has been convicted in a court of this or any other state or of the United States of a crime punishable as a felony or a crime involving moral turpitude or is guilty of wilful misconduct in a judicial office involving moral turpitude or wilful or persistent failure to perform judicial duties or habitual drunkenness or illegal use of narcotic drugs, shall make such investigation as it deems necessary to determine whether formal proceedings shall be instituted and a hearing held."

That rule has not been amended since the amendment of ORS 1.420 and 1.430 to empower the Commission to recommend the suspension or censure of a judge for misconduct.

Although not mentioned in either written briefs or oral argument, a further problem arises in this case as a result of the fact that all conduct complained of occurred prior to the amendment in 1971 of ORS 1.420 and 1.430. Indeed, little of such conduct occurred after the adoption of Article VII, § 8.

duct" in his judicial office, but that such misconduct was so wrongful as to involve "moral turpitude."

■ Despite the protestations by the accused, we find that his continued practice of law after assuming judicial office constituted "wilful misconduct." He knew that upon becoming a judge he was "not supposed to practice law" and he "checked some authorities" on that question. ORS 1.220 and Canon 30 of the Canons of Judicial Ethics both clearly provide that upon assuming judicial office a judge may no longer practice law in any manner, without qualification, and whether or not for compensation.[⑫]

As we said in *In re Nicholas D. Zafiratos,* 259 Or 276, 281, 486 P2d 550 (1971):

> "We are of the opinion that the accused's misconduct, particularly as a judge, was such that any thinking lawyer should have known it was unethical. * * *."

■ Just as an attorney is held by the Code of Professional Responsibility to standards of integrity and ethical conduct higher than that required for ordinary persons, we hold that because the office of judge is one of even greater trust and confidence, a judge must be held by the Canons of Judicial Ethics (now the Code of Judicial Conduct) to standards of integrity and ethical conduct higher than those required for attorneys. The confidence of the public in the integrity of the courts of Oregon demands no less.

---

[⑫] For the specific provisions of ORS 1.220 see note 3, *supra.*

Canon 30 of the Canons of Judicial Ethics, adopted by the Oregon Supreme Court in 1952, provided as follows:

"In this state, judges of the district, circuit and supreme courts may not practice law. * * * Those who are forbidden to practice should refrain from accepting any professional employment while in office * * *."

That canon has now been superseded by Canon 5F of the new Code of Judicial Conduct, as adopted by this court on March 11, 1975, and which provides as follows:

"Practice of Law. A judge should not practice law."

We are unable to find, however, that the misconduct by the accused was such as to involve "moral turpitude." It appears from the legislative history of Article VII, § 8, that the legislature attached no special meaning to that term other than as found in the "case law." This intent is confirmed by the fact that Article VII, § 8, also provides for the removal of a judge convicted of a felony or "a crime involving moral turpitude."

Probably the most common definition of "moral turpitude," as defined in the "case law," is stated in *Ruble v. Kirkwood*, 125 Or 316, 320-21, 266 P 252 (1928), as follows:

> " 'An act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man or to society in general contrary to the accepted and customary rule of right and duty between man and man.' [Citing authorities]."

To the same effect, see 1 Wharton's Criminal Law and Procedure 67, § 31 (Anderson ed 1957).[39]

There has been considerable difficulty and uncertainty in determining whether various crimes are to be classified as crimes involving moral turpitude or as crimes not involving moral turpitude.[40]

[39] As also stated in LaFave and Scott, Handbook on Criminal Law 29, § 6 (1972):

"Crimes are divided for certain purposes into crimes *mala in se* (wrong in themselves; inherently evil) and crimes *mala prohibita* (not inherently evil; wrong only because prohibited by legislation). The distinction, though an ancient one, has survived down to the present time, * * *.

"* * * [G]enerally a crime involving 'moral turpitude' is *malum in se*, but otherwise it is *malum prohibitum*. * * *"

See also In re Means, 207 Or 638, 640, 298 P2d 983 (1956); In re King, 165 Or 103, 113, 105 P2d 870 (1940); State v. Edmunson, 103 Or 243, 246, 204 P 619 (1922); and Ex parte Mason, 29 Or 18, 21, 43 P 651 (1896).

[40] See Smith v. Durant, 271 Or 671, 533 P2d 810 (1975), and authorities cited therein, and LaFave and Scott, *supra* note 13.

We do not believe that the misconduct of the accused in this case was of such "baseness, vileness or depravity" as to constitute misconduct involving "moral turpitude," according to either the general definition of that term in the "case law" or the common understanding of the meaning of that term. As previously noted, the words "moral turpitude" as a limitation upon "wilful misconduct in a judicial office" as a ground for the removal of a judge was added by the 1967 Oregon Legislature to the provisions of the proposed constitutional amendment as originally recommended by the Oregon Judicial Council.

It follows that there is no basis under the facts of this case for the removal of the accused from his judicial office. It also follows, for reasons previously stated, that there is no proper basis for his suspension from office under the provisions of ORS 1.420 and 1.430, as amended.

■ We do, however, by the publication of this opinion, reprimand the accused for his misconduct as a judge. We believe that the authority to reprimand judges for misconduct in judicial office is within the inherent power of this court, as confirmed to this court by ORS 1.002 to supervise the courts of this state, and that this power is not restrained by the limitations imposed by Article VII, § 8, upon the power of this court to remove judges for misconduct.[21]

Although no one suffered injury or loss as a result of the misconduct of the accused and although it did

---

[21] We do not reach the question whether this court may also have inherent power to suspend a judge from the performance of his judicial duties, despite the fact that it has no power to suspend a judge from his judicial office without pay. In our judgment, however, such an order would not be appropriate under the facts of this case, in any event. But see In re DeSaulnier, 360 Mass 787, 279 NE2d 296, 307-08 (1972); Ransford v. Graham, 374 Mich 104, 131 NW2d 201, 203 (1964); In re Graham, 366 Mich 268, 114 NW2d 333, 338 (1962); and In re Sussman, 112 NH 99, 289 A2d 403, 404-05 (1972).

not directly affect the integrity of the Circuit Court for Klamath County, it was of such a nature as to tend to undermine the confidence of the public in the integrity of that court. It has been truly stated that:

> "For every bad judge, there are a hundred good, conscientious, hard working judges who want the image of the judiciary protected. The misconduct by one judge casts an adverse reflection upon every judge * * *."[16]

II. *Statutory provisions for discipline of judges as lawyers.*

As previously stated, the complaint of the Oregon State Bar and the recommendation of its Trial Board are based upon the same acts of misconduct by the accused. That Trial Board, based upon the same record, concluded that the accused had acted as an attorney in the estates mentioned in violation of ORS 1.220,[17] which forbids a judge to practice law.[18] The recommendation of the Trial Board to this court is that the accused be suspended from the practice of law in Oregon for a period of two months.

In *Jenkins v. Oregon State Bar,* 241 Or 283, 405 P2d 525 (1965), decided prior to the adoption in 1968 of Article VII, § 8, proceedings had been brought by the Oregon State Bar charging Jenkins with misconduct in his capacity as a district judge. That proceeding did not seek the removal of the judge from office. It was contended by Jenkins by writ of prohibition in that case that the Oregon State Bar, by seeking his disbarment as a lawyer, sought also to dis-

---

[16] Report on Constitutional Amendment for Removal of Judges, Portland City Club Bulletin 189 at 193 (1968).

[17] See note 3, *supra.*

[18] The Trial Board also found that the accused signed one order in an estate for which he had previously acted as attorney, but had referred to another attorney to handle, in violation of ORS 14.210(1)(b).

qualify him as a judge by reason of the fact that in order to qualify as a judge he was required to be a member of the Oregon State Bar.

In denying the writ of prohibition in *Jenkins* we found it unnecessary to decide that question, although holding (at 287) that "[a]ny lawyer, if disbarred, is disqualified from seeking election or re-election to the bench." We went on to hold, however, that the Oregon State Bar was nevertheless entitled to bring disciplinary proceedings against a judge as a lawyer. In so holding we said (at 289-90):

"In Oregon, a lawyer does not cease to be a lawyer when he is elected or appointed to a judicial office. * * * As far as his duty to his profession is concerned, a judge is a lawyer whose labors are performed behind the bench instead of before it.

"As observed recently by Chief Justice Weintraub of New Jersey:

" 'In terms of rational connection with fitness at the bar, behavior of an attorney in judicial office cannot be insulated from the demands of professional ethics. On the contrary, the judge's role is so intimate a part of the process of justice that misbehavior as a judge must inevitably reflect upon qualification for membership at the bar. Hence the disciplinary power should apply unless it is restrained by some provision of the Constitution. * * *.' 34 NJ at 264-265, 168 A2d at 41."[⑩]

Three years later Article VII, § 8, was adopted as an amendment to the Oregon Constitution. As previously noted, it states that the methods provided by that section and by the provisions of § 18 for recall

[⑩] See also Annot., 53 ALR2d 305 (1957). Subsequently, in In re Edwin L. Jenkins, 244 Or 554, 419 P2d 618 (1966), Judge Jenkins was suspended from membership in the Oregon State Bar for two years. He subsequently resigned his position as a district judge.

are the "exclusive methods of removal of a judge from judicial office." It is also of interest to note that during the consideration by the 1967 Oregon Legislature of SJR 9—the proposed amendment to Article VII, § 8—the Senate Judiciary Committee amended the original proposal by the Oregon Judicial Council to add, as a ground for removal, the "suspension or disbarment from active membership in the Oregon State Bar * * *."[20] That additional provision was deleted, however, when SJR 9 was finally approved by the legislature for submission to vote of the people in 1968.

■ It follows that at the present time the suspension or disbarment of a judge as a member of the Oregon State Bar cannot require his removal as a judge, despite the fact that it would disqualify him from running for re-election as a judge while still suspended or disbarred.

It also follows in our opinion, that it would be a futile and anomalous gesture in this case to suspend the accused from membership in the Oregon State Bar for two months, as recommended by its Trial Board, when the effect of such a suspension would be only to prohibit his further practice of law—conduct already prohibited by ORS 1.220. The accused was re-elected in 1974 and need not stand again for re-election as a judge until 1980. Because we do not consider his conduct to involve "moral turpitude," we do not believe that his conduct was such as to require either permanent disbarment as a lawyer or suspension from practice for a period of as long as five years.[21]

[20] Senate Amendments to SJR 9 by Senate Committee on Judiciary, March 24, 1967.

[21] Compare penalty by suspension for a period of two years for more serious misconduct in In re Edwin L. Jenkins, note 18, *supra.* For penalties by suspension of lawyers from practice for more serious misconduct for periods up to three years, see

As previously stated, however, we reprimand the accused for his misconduct as a judge. This reprimand includes his misconduct as a lawyer.

Since the institution of the proceedings in this case it has come to the attention of this court that a bill is now pending before the 1975 Oregon Legislature to amend Article VII, § 8, by deleting some of its limitations upon the grounds for removal, suspension or reprimand of judges for misconduct.[22]

It would be inappropriate for this court to comment by this opinion upon the merits of that proposed bill. We believe, however, that the history of the experience to date under the present provisions of Article VII, § 8, of the Oregon Constitution, as well as a recitation of the facts of this case, speak for themselves.

The accused is reprimanded for his misconduct.

---

In re Kerrigan, 271 Or 1, 530 P2d 26 (1975); In re Reuben G. Lenske, 269 Or 146, 523 P2d 1262 (1974); In re Patrick M. McMahon, 266 Or 376, 513 P2d 796 (1973); In re Charles R. Harvey, 268 Or 390, 521 P2d 327 (1974); In re Neil Brown, 262 Or 171, 493 P2d 1376, 497 P2d 668 (1972); In re George C. Staples, 259 Or 406, 486 P2d 1281 (1971); and In re Milton O. Brown, 255 Or 628, 469 P2d 763 (1970).

[22] See SJR 48, Oregon Legislature (1975), sponsored by the Commission on Judicial Fitness.