Argued and submitted May 14, 2002, complaint dismissed April 17, 2003

# In re Complaint as to the Conduct of

## LISA D. NUSS,
*Accused.*

### (OSB 00-93; SC S48966)

67 P3d 386

Wayne Mackeson, Birmingham & Mackeson, LLP, Portland, argued the cause and filed the brief for the accused.

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

PER CURIAM

---

* Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that the accused committed a "misdemeanor involving moral turpitude," subjecting her to discipline under ORS 9.527(2), because she had pleaded guilty to one count of harassment under ORS 166.065(1)(a)(A). A trial panel of the Disciplinary Board agreed with the Bar and imposed a public reprimand. The accused sought review of the trial panel's decision under ORS 9.536(1) and Bar Rule of Procedure (BR) 10.3, contending that that type of harassment is not a misdemeanor involving moral turpitude under ORS 9.527(2). We review *de novo*. ORS 9.536(3); BR 10.6. We disagree with the trial panel's application of ORS 9.527(2) and dismiss the complaint.

The facts are undisputed. On February 22, 2000, the accused pleaded guilty to one count of harassment under ORS 166.065(1)(a)(A). ORS 166.065 provides, in part, as follows:

"(1)   A person commits the crime of harassment if the person intentionally:

"(a)   Harasses or annoys another person by:

"(A)   Subjecting such other person to offensive physical contact * * *[.]

"* * * * *

"(3)   Harassment is a Class B misdemeanor."

The Bar subsequently initiated a disciplinary proceeding in which it charged the accused with violating ORS 9.527(2). That statute provides, in part, that this court may discipline a member of the Bar when:

"[t]he member has been convicted in any jurisdiction of an offense which is a misdemeanor involving moral turpitude or a felony under the laws of this state, or is punishable by death or imprisonment under the laws of the United States, in any of which cases the record of the conviction shall be conclusive evidence[.]"

The Bar asked that the accused be publicly reprimanded.

The accused and the Bar agreed that the trial panel should determine whether the accused's misdemeanor involved moral turpitude by "reference to the nature and elements of the crime and without consideration of the specific circumstances of [the] case." *See In re Chase*, 299 Or 391, 399, 702 P2d 1082 (1985) (so stating). The parties disagreed, however, on whether the *Chase* court's definition of moral turpitude under ORS 9.527(2) would reach a violation of ORS 166.065(1)(a)(A). The Bar contended that, under *Chase*, a misdemeanor involves moral turpitude if the crime has the element of intent or knowledge, and also involves, as in this instance, "harm to a specific victim." *Id.* at 402. The Bar further contended that a violation of ORS 166.065(1)(a)(A) met both those requirements.[1]

The accused agreed that, under *Chase*, all misdemeanors involving moral turpitude must have either intent or knowledge as an element of the crime. The accused argued, however, that *Chase* did not make "harm to a specific victim" one of the additional factors necessary to conclude that a misdemeanor involves moral turpitude. *Chase*, the accused contended, held only that "[c]rimes involving *violence* against another person are * * * classed as moral turpitude offenses." *Id.* at 401 (emphasis added). The accused argued that a violation of ORS 166.065(1)(a)(A) did not qualify as a crime of violence and so was not a misdemeanor involving moral turpitude under ORS 9.527(2).

The trial panel determined that a violation of ORS 166.065(1) involves both intent and harm to a specific victim

---

[1] In *Chase*, the accused lawyer had been convicted of the misdemeanor of attempted possession of a controlled substance. 299 Or at 393. The Bar asserted that ORS 9.527(2) authorized this court to impose discipline for that crime. In its opinion, the *Chase* court suggested that a misdemeanor involves moral turpitude when it has certain characteristics:

"We conclude, as to the elements of the crime at issue here, the following: this attempted possessory offense requires the element of intent or knowledge; however, it does not contain the element of fraud, deceit or dishonesty and does not involve harm to a specific victim. Neither is this case one involving illegal activity undertaken for personal gain. It does not contain any of the elements, in addition to intent, that we have interpreted moral turpitude to require."

*Id.* at 402.

and, thus, was a misdemeanor involving moral turpitude. It concluded that the appropriate disciplinary sanction was a public reprimand.

We turn to the text of ORS 9.527(2) to determine what the legislature meant by the phrase "moral turpitude." We do so because, strictly speaking, the *Chase* court's characterization of the "harm to a specific victim" category of misdemeanors involving moral turpitude—the only category arguably applicable here—was *dictum*. *Chase* dealt with what sometimes is called a "victimless" crime. The only thing that the *Chase* court needed to decide was that that category of moral turpitude reached, *at most*, only crimes that involved a victim (and thus caused "harm to a specific victim"). Having determined that even the outer boundaries of moral turpitude did not reach the crime at issue, the *Chase* court did not determine whether the boundaries were any narrower. That can be seen in the way that the *Chase* court continually expanded the scope of that particular category of cases involving moral turpitude: It started with a single federal case holding that voluntary, unjustifiable homicide involved moral turpitude, 299 Or at 401 (citing *De Lucia v. Flagg*, 297 F2d 58 (7th Cir 1961), *cert den*, 369 US 837, 82 S Ct 867, 7 L Ed 2d 843 (1962));[2] broadly recharacterized that category, without any discussion, as "[c]rimes involving violence against another person," *id.*; and then recharacterized the category again, even more broadly, as "harm to a specific victim," *id.* at 402.

■■ In interpreting a statute, we begin with the text and context of the statute, giving words of common usage their plain, natural, and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). If a term has a well-defined legal meaning, however, then we give it that meaning. *Stull v. Hoke*, 326 Or 72, 78, 948 P2d 722 (1997).

---

[2] In *De Lucia*, an alien deportation case, the respondent had, among other things, been convicted in Italy of voluntary homicide. The *De Lucia* court stated: "So long as the homicide is voluntary and not justifiable no amount of provocation can remove it from the class of crimes involving moral turpitude." 297 F2d at 61. *De Lucia* said nothing else about the parameters of moral turpitude.

This court first defined "moral turpitude" over one hundred years ago. In *Ex parte Mason*, 29 Or 18, 43 P 651 (1896), this court, interpreting the predecessor to ORS 9.527(2),[3] quoted with approval the following definition of moral turpitude:

> " '[A]n act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' "

*Id.* at 21 (quoting Martin L. Newell, *The Law of Defamation, Libel and Slander* ch VI, § 12, 99 (1890)).[4] *See also Chase*, 299 Or at 393 (noting that "often quoted definition").

The *Mason* court acknowledged that the exact parameters of moral turpitude will follow changing moral standards.

> " 'This element of moral turpitude,' says Lowrie, J., in *Beck v. Stitzel*, 21 Pa St 522, 'is necessarily adaptive; for it is itself defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community.' * * * [T]he term is vague, and * * * 'moral turpitude' is involved only when so considered by the state of the public morals, and hence it might be applied in some sections and denied in others, thus rendering a satisfactory definition of the term diffi ilt[,] if not impossible."

*Mason*, 29 Or at 23.

Some core aspects of moral turpitude do not change, however. The definition set out in *Mason* necessarily includes the other categories of crimes involving moral turpitude identified by *Chase*: fraud, deceit, dishonesty, or illegal activity undertaken for personal gain.

*Chase* also concluded that the courts should determine whether a crime involves moral turpitude by reference only to the "record of conviction." 299 Or at 398-99; *see* ORS

---

[3] The Codes and General Laws of Oregon, ch XIV, title V, § 1047 (Hill 2d ed 1892).

[4] Newell, in turn, derived that definition by combining the dictionary definitions of the words "moral" and "turpitude." Newell, *Law of Defamation* ch VI, § 12, at 98-99, 98 nn 4-5.

9.527(2) (using "record of the conviction"). *Chase* did not, however, identify what constitutes the "record of the conviction."[5]

■       Therefore, we must determine what the legislature intended this court to consider when it stated in ORS 9.527(2) that the "record of the conviction" is "conclusive evidence." The phrase "record of the conviction" have been used in the statute since 1862, *see* General Laws of Oregon, Civ Code, ch 14, title V, § 1015, p 402 (Deady 1845-1864) (enacted Oct 11, 1862) (at that time using phrase "record of his conviction"), and so we consider how the phrase would have been understood at that time. *See Theatre West of Lincoln City, Ltd. v. Dept. of Rev.*, 319 Or 114, 119, 873 P2d 1083 (1994) (discussing 1854 statute; "[T]o ensure that we are keeping faith with the probable understanding (and, therefore, the probable intention) of the 1854 enacting body, we have inquired into the use of the term 'literary' around that time.").

We first observe that the legislature directed this court to look at the *"record* of the conviction," not just the "judgment." It is often necessary for a court to consider portions, if not the entirety, of the record for the court to determine what was adjudicated in the prior case. *See Gilmore v. Taylor*, 5 Or 89, 91-92 (1873) ("These prior portions of the record [before entry of an order directing sale of property by administrator of estate] * * * are also material and pertinent for the purpose of showing what subject-matter was before the court for adjudication, and upon whom the adjudication is binding. * * * For these reasons the plaintiff had a right to insist that the record should be presented as a whole, or in other words, that a foundation should be laid for exhibiting the decretal order."). *See also* 7 John Henry Wigmore, *Evidence in Trials at Common Law* § 2110, 648 (James H. Chadbourn rev 1978) ("Without considering the plaintiff's

---

[5] At one point in its opinion, the *Chase* court used the words "judgment of conviction" instead of "record of the conviction," 299 Or at 399 ("it is determined from the *judgment of conviction alone* that the misdemeanor involved moral turpitude" (emphasis added)), but nothing indicates that the court actually considered whether those two phrases were synonymous. Indeed, the *Chase* court acknowledged the *Mason* court's usage of the phrase "record of his conviction," suggesting that the substitution of the word "judgment" for "record" might have been simply inadvertent. *Id.* at 398-99.

statement of claim, the defendant's statement of defense, the intermediate motions and orders, the verdict, and the later doings, it may be impossible to ascertain what are the terms of the judgment which is to be proved and acted on.").

The present proceeding demonstrates why a review of the judgment alone might not permit the court to complete its analysis. Here, the judgment of conviction states only that the accused was convicted of harassment. The crime of harassment, ORS 166.065, includes five different and disparate fact patterns. It is not possible to determine from the judgment alone that the accused intentionally intended to harass or annoy a person by subjecting the person to an offensive physical contact, ORS 166.065(1)(a)(A), as opposed to (for example) "[s]ubject[ing] another to alarm by conveying a false report, known by the conveyor to be false, concerning death or serious physical injury to a person, which report reasonably would be expected to cause alarm," ORS 166.065(1)(b), or knowingly allowing another to use a telephone to commit one of the other forms of harassment, ORS 166.065(2).[6]

■ ORS 9.527(2) also directs that the record of the conviction is to be "conclusive evidence." It is apparent that the statute does not make every piece of evidence that was introduced in the criminal proceeding conclusive in a lawyer disciplinary proceeding, because then any evidence of innocence would be as conclusive as the prosecution's evidence of guilt. Rather, by making the "record *of the conviction*" conclusive (emphasis added), the legislature directed this court to examine the record to determine what the court actually and necessarily resolved in finding the defendant guilty. Both the Bar and the accused lawyer are bound by the record of the conviction: The accused lawyer cannot contend that he or she is innocent, and the Bar cannot argue, for the purposes of ORS 9.527(2), that the accused lawyer actually committed a more serious crime. Neither the accused lawyer nor the Bar can challenge the factual predicates that the conviction actually and necessarily resolved.[7]

---

[6] In 1999 the legislature amended ORS 166.065(2) to include electronic devices. Or Laws 2001, ch 870, § 2.

[7] In that respect, the statute invokes a species of issue preclusion. *See State Farm v. Century Home*, 275 Or 97, 104, 550 P2d 1185 (1976) ("Since [issue

It will not be necessary for the parties always to present to the court the entire record of the conviction. Some crimes, by their very nature, may "announce" that they involve moral turpitude; the court then need not consider anything beyond the judgment of conviction. In other cases, the crime itself may not announce moral turpitude, but those facts actually and necessarily resolved in convicting the accused lawyer will demonstrate that the misdemeanor involves moral turpitude.

■    In summary: When a lawyer is charged under ORS 9.527(2) with committing a misdemeanor involving moral turpitude, this court will apply the following test, remembering that the Bar bears the burden of proof. First, this court will consider whether the crime was intentional or knowing, as required by *Chase*. Second, this court will consider whether the accused lawyer's crime involved any of the following: fraud; deceit; dishonesty; illegal activity for personal gain; or "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Mason*, 29 Or at 21 (internal quotation marks and citation omitted). If the Bar sustains its burden of proof as to both parts of the test, either because the crime itself "announces" those facts or because those facts actually and necessarily were resolved in the conviction, then the accused lawyer committed a misdemeanor involving moral turpitude.

■    We now turn to this proceeding. We agree with the Bar that the accused committed a crime that was intentional or knowing. Harassment under ORS 166.065(1)(a)(A), however, is not necessarily a crime involving moral turpitude. The act of intentionally harassing or annoying another person by subjecting that person to offensive physical contact does not involve fraud, deceit, dishonesty, or illegal activity

preclusion] rests upon the principle that an issue was actually decided and was necessary to the judgment in a prior action, the party asserting [it] bears the responsibility of placing into evidence the prior judgment and sufficient portions of the record, including the pleadings, exhibits, and reporter's transcript of the testimony and proceedings, to enable the court to reach that conclusion with the requisite degree of certainty." (Citations omitted.)).

for personal gain. Neither can we say that it is "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Mason*, 29 Or at 21 (internal quotation marks and citation omitted). The crime itself does not "announce" that it involves moral turpitude.

We also conclude that those facts actually and necessarily resolved in convicting the accused do not demonstrate moral turpitude. Those facts are, as the accused admitted in her "Petition to Plead Guilty / No Contest and Waiver of Jury Trial," that "[o]n April 6, 1999, with the intent to irritate [the victim], [the accused] subjected [the victim] to offensive physical contact by reaching in her vehicle and touching her shoulder." Those facts do not demonstrate baseness, vileness, or depravity in a moral sense, or involve fraud, deceit, dishonesty, or illegal activity for personal gain. We conclude that the record of the conviction here does not show that the accused's actions in violation of ORS 166.065(1)(a)(A) involved moral turpitude.

Complaint dismissed.