244 Or. 554 (1966)
419 P.2d 619
IN RE COMPLAINT AS TO THE CONDUCT OF EDWIN L. JENKINS, ACCUSED.
Supreme Court of Oregon.
Argued October 3, 1966.
Accused suspended October 26, 1966.
James K. Gardiner, Hillsboro and Leo Levenson, Portland, argued the cause and filed briefs for the accused.
Sidney Teiser, Portland, argued the cause for the Oregon State Bar. With him on the brief was Robert H. Hollister, Portland.
Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, DENECKE, HOLMAN and LUSK, Justices.
ACCUSED SUSPENDED.
PER CURIAM.
This is a review of a disciplinary proceeding against a member of the bar of this court who is also *555 the District Judge for Washington County. He is charged with violation of the Canons of Judicial Ethics[1] for judges because of certain alleged actions performed in his judicial capacity. This matter has previously been before this court in a proceeding to determine whether this court, under the circumstances, had jurisdiction to discipline a judge for violation of the Canons of Judicial Ethics, Jenkins v. Oregon State Bar, 241 Or 283, 405 P2d 525 (1965). The question was answered in the affirmative.
The accused is presently charged with 10 counts of misconduct. The first is that he signed a default judgment in favor of his wife. It was for a claim for legal services performed by the accused and assigned by him to his wife in which claim he had, prior to assuming the bench, acted as her attorney. The accused admits the circumstances and that he did so sign such a judgment. In his defense he stated he had absolutely no recollection of signing the order. No money was ever collected on the judgment.
The second, third, fourth and fifth charges are that the accused appointed his wife as administratrix of four different estates, passed upon her accountings in said estates and set and allowed her fees as such administratrix, including fees for extraordinary services in two of them. He also is charged with appointing his father-in-law as appraiser in one of them and setting and allowing his fees as such appraiser. The accused admits that he did so act but claims that he was not aware at that time of the impropriety of such actions. The evidence indicates that the orders appointing his wife as administratrix were submitted *556 to accused with his wife's name already inserted as administratrix. However, the evidence further indicates that in at least two instances such use of her name was at the suggestion of the accused. There is no claim made in these or subsequent charges that the accused's wife or father-in-law were incompetent, failed to properly perform their duties, or that the fees allowed were disproportionate for the work that was done.
The sixth charge is that the accused appointed his wife as an appraiser in an estate. The accused admits he did so appoint her. The evidence indicates that the executrix of the estate, who was the widow of the deceased, was a close friend of the accused's wife and requested her appointment.
The seventh charge is that the accused appointed his wife as administratrix with the will annexed of the estate of his father-in-law. The accused admits that he made such an appointment. He subsequently disqualified himself in the estate when requested to do so by the attorney representing his wife's sister, but did not set aside his appointment of his wife. The accused presented testimony that the appointment was the result of an agreement between the accused's wife and her sister that accused's wife would be administratrix of her father's estate and her sister would be guardian of her mother's estate. There was evidence of friction between the accused's wife and her sister and the sister subsequently moved to have accused's wife's appointment as administratrix set aside. This occurred subsequent to the time the accused disqualified himself as the judge in the estate. The sisters then agreed that the accused's order appointing his wife would be set aside and after a hearing before another judge, accused's wife was reappointed.
*557 The eighth charge is that the accused signed a complaint charging unlawful trespass against an individual who damaged a door of an apartment house in which accused owned an interest and which he operated as landlord; that accused thereafter arraigned said defendant, accepted his plea of guilty, continued the matter for sentence and ordered the defendant to jail until such time as he paid the amount of the damage; that upon payment being made the accused ordered the defendant released from jail and placed on probation for the period of one year. The accused admitted the facts, but claimed he was not aware that any problem existed concerning his actions.
The ninth charge is that the accused heard the charge and pronounced sentence in a criminal matter against two defendants who were charged with stealing property belonging to the estate of his father-in-law and of which estate his wife was administratrix. The accused admitted his actions but claimed he did not realize any impropriety was involved.
The last charge is that accused as judge took an oath that he would not accept any but judicial office during the term for which he was elected, and that thereafter during his service of said term he filed as a candidate for district attorney in which he made a declaration that if elected to the office he would qualify. The accused admitted such facts. The evidence indicates that after filing he became aware that he could not qualify and brought a successful suit to have his name removed from the ballot. There is no evidence that he accepted any office other than judicial office. There is evidence that he filed a statement saying he would, but there is no evidence that he did so.
The accused has admitted the facts in each of the *558 10 charges against him which leaves only the question of whether the facts alleged are sufficient to constitute violations of the Canons of Judicial Ethics. Canon 12 of the Canons of Judicial Ethics provides in part as follows:
"Appointees of the Judiciary and Their Compensation. Trustees, receivers, masters, referees, guardians and other persons appointed by a judge to aid in the administration of justice should be selected with a view solely to their character and fitness. The power of making such appointments should not be exercised by him for personal or partisan advantage. He should not permit his appointments to be controlled by others than himself. He should also avoid nepotism and undue favoritism in his appointments."
Canon 13 provides:
"Kinship or Influence. He should not act in a controversy where a near relative is a party; he should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position or influence of any party or other person."
Canon 28 provides in part as follows:
"Self Interest. He should abstain from performing or taking part in any judicial act in which his personal interests are involved. * * *"
The facts admitted in charges two through seven are a violation of Canon 12. His appointments amounted to nepotism and resulted in advantage to himself by the enhancement of his wife's financial status, which would indirectly be beneficial to him.
The facts admitted in charges one through seven and in charge nine are a violation of Canon 13. The accused's actions in matters in which his relatives were *559 involved was conduct which would justify the impression that he was taking action for the benefit of relatives, and that he was therefore affected by the kinship of the person apparently benefited.
The facts admitted in charges one through eight show the accused guilty of violations of Canon 28 because he acted in matters in which his personal interest was involved either directly, or indirectly because of his wife's pecuniary interest which would benefit the marital unit.
The last charge involves a claim of violation of his oath of office when accused attempted to file for district attorney. His oath was that he would not accept any non-judicial office during the term for which he was elected. It was obvious he was not qualified to accept non-judicial office and that his filing was inadvertently caused by ignorance, which filing he attempted to and did rectify as soon as he discovered his error. This may reflect on his knowledge but not on his ethics. There was evidence of his failure, after his filing, to disqualify himself in criminal matters in which the then district attorney was involved, who was a candidate for re-election. We need not consider the propriety of his failure to so disqualify himself as it is not made the basis of any charge against the accused.
The trial committee of the Oregon State Bar recommended a public and private reprimand. The Board of Governors recommended permanent disbarment. We believe both recommendations to be unrealistic. Some of the charges of which the accused is guilty are extremely serious. On the other hand, we believe that the evidence does not indicate venality but rather ignorance and lack of sensitivity for ethical considerations. The accused made no effort to be secretive *560 about his actions in question. They are all of public record. We also believe the evidence indicates that the accused has realized the impropriety of his actions and will in the future be more circumspect concerning ethical considerations.
It is ordered that the accused be suspended as a member of the Oregon State Bar for the period of two years.
NOTES
[1] As Adopted by the Oregon State Bar September 28, 1935 and Approved and Adopted by the Supreme Court of the State of Oregon November 17, 1952.