Argued April 3, accused reprimanded April 17, 1975

IN RE COMPLAINT AS TO THE CONDUCT OF
## L. ORTH SISEMORE, *Accused.*
534 P2d 167

*George A. Rhoten,* of Rhoten, Rhoten & Speerstra, Salem, argued the cause for petitioner.

*Donald H. Coulter,* Grants Pass, argued the cause for the Oregon State Bar.

Before MCALLISTER, J., Presiding Justice, and DENECKE, HOLMAN,* TONGUE, HOWELL and BRYSON, Justices.

PER CURIAM.

---

* Holman, J., did not participate in this decision.

This is a proceeding to discipline a judge for misconduct and is a companion case to *In re Donald W. Piper,* decided this day. This proceeding, however, is brought solely by the Oregon State Bar.

The misconduct of the accused was less serious than that of Judge Piper. The accused became a circuit judge for Klamath County on January 4, 1965. At that time Judge Piper was already a circuit judge for that county, having been appointed on August 9, 1961. As a result, Judge Piper was the senior judge for that county.

Some time after his appointment it was agreed that the accused be assigned the probate work of that court, among other work. At that time a state-wide effort was being made, under the direction of the Chief Justice of this court, to "clean up" old pending cases, including probate cases. The accused then examined some 400 files over three years old and found that these files included three cases in which Judge Piper appeared to be the attorney of record.

The accused talked to Judge Piper and asked him to "get them cleaned up." Over a period of time Judge Piper brought or sent to the accused various petitions and orders to be signed and the accused signed them.

One of these was an order approving the final account in an estate, including approval of attorney fees in the sum of $2,018.32 for Judge Piper. That fee included an allowance of $50 for extraordinary services in preparing income tax returns for the years 1961 through 1968. In another probate case the accused signed a decree of distribution approving payment of attorney fees to Judge Piper in the sum of $1,022. In a guardianship estate the accused signed an order authorizing payment of expenses incurred by the ward and an order closing that estate, in which

Judge Piper had also acted as attorney, but received no attorney fee for such services.

The Trial Board found that in each instance the entry of such orders would have been entirely regular and proper if presented by an attorney currently authorized to practice law in Oregon and that no person sustained any loss or damage by reason of such orders.

The Trial Board found, however, that when the accused signed these orders he knew that they had been presented by Judge Piper and "knew or suspected that Piper's preparation and presentation of the Decrees, Orders and supporting documents constituted the unlawful practice of law by a circuit court judge" and that the money ordered paid to Piper in the two estates was for legal services which constituted such unlawful practice of law.

The accused admitted these facts, but contended, and the Trial Board found, that he signed these orders because:

"a. He doubted his legal authority to refuse to do so;

"b. He desired, in general, to expedite the house-cleaning closure of old pending estates which was both needed and had been called for by state authorities;

"c. He was concerned that a change of attorneys would only prolong the age of these probate proceedings;

"d. He was hesitant to mention or raise an issue regarding the probable unlawfulness of Piper's activities, since to do so could have been a source of offense and friction between the Accused and the senior-in-service judge;

"e. He assumed that Piper must have been acting pursuant to some legal authority of which the Accused was unaware."

■■ As stated in *In re Donald W. Piper, supra,* the Oregon State Bar may properly institute disciplinary proceedings against attorneys who are judges for violation of the Rules of Professional Conduct of the Oregon State Bar.① See also *Jenkins v. Oregon State Bar,* 241 Or 283, 405 P2d 525 (1965).

■ These Rules of Professional Conduct (since superseded by the Code of Professional Responsibility, adopted December 30, 1970) provide, among other things, that an attorney

a. "should strive at all times to uphold the honor and maintain the integrity of the profession." (Rule 19)

b. "shall at all times so conduct himself as to inspire confidence in and respect for courts and judicial officers." (Rule 24)②

In addition, the Canons of Judicial Ethics adopted by this court in 1952 (since superseded by the Code of Judicial Conduct, adopted March 11, 1975), provide that:

a. "A judge's official conduct should be free from impropriety and the appearance of impropriety." (Canon 4)

b. "He should avoid infractions of law." (Canon 4)

c. "He should utilize his opportunities to criticize and correct unprofessional conduct of attorneys and counselors brought to his attention." (Canon 11)

d. "If adverse comment is not a sufficient cor-

---

① As also held in In re Donald W. Piper, 271 Or 726, 534 P2d 159 (1975), a judge who is suspended or disbarred a a result of such proceedings may be disqualified from seeking re-election, but a judge cannot be suspended or removed from office by such a proceeding.

② See also Canon 1 and Disciplinary Rule 1-102(5) of the Code of Professional Responsibility, adopted December 30, 1970.

rective, he should send the matter [of professional conduct] at once to the proper investigating disciplinary authorities." (Canon 11)[9]

After considering the foregoing facts and rules of professional and judicial conduct, the Trial Board of the Oregon State Bar found that the conduct of the accused constituted what it referred to as "technical violations" of those rules.

We do not regard the signing of those orders by the accused as mere "technical violations." These were serious violations of his duty both as a lawyer and as a judge.

We agree with the following observations by the Trial Board:

"There can be no doubt that in the instances herein involved Judge Piper was engaging in the practice of law. We think the Accused ethically should not have executed these Orders and Decrees at the behest of his fellow circuit court judge. To sign them was a failure to uphold the honor and integrity of the profession. It was not consistent with confidence in and respect for courts and judicial officers. Execution of the Decrees and Orders was official conduct carrying the appearance of impropriety, although, in fact, no one was actually harmed.

"To have refused to sign them would have maintained the integrity of the profession, upheld respect for our clean judicial system, and would have avoided even the appearance of impropriety. To have declined to sign would have avoided any contact with, or apparent acquiescence in, infractions by Judge Piper of the statute prohibiting law practice by a circuit judge. A refusal to sign could well have illuminated these infractions for Judge Piper to see, thereby inducing his forebearance. This

---

[9] See also Canons 1 and 2 of the Code of Judicial Conduct, adopted March 11, 1975.

748

would have discharged the ethical duty to 'criticize and correct unprofessional conduct of attorneys.' If criticism had not caused the infractions to end then a duty to report to the appropriate officials could have arisen."

Nevertheless, we agree with the following findings by the Trial Board:

"The record shows the Accused to be an able, compassionate and industrious lawyer and judge. He is a credit to the circuit bench of this State. No part of the conclusions to which we are forced, as hereinafter expressed, diminish his integrity, honesty or worthiness as an attorney or judicial officer."

Two members of the Trial Board recommended that the accused be privately reprimanded. The third member recommended a public reprimand.

We agree that the misconduct by the accused was not sufficiently serious as to require suspension, much less disbarment as an attorney. We cannot, however, accept the recommendation of a private reprimand.

As recently recognized by this court in *In re Harry Boivin*, 271 Or 419, 533 P2d 171 (1975), upon the filing of such a complaint by the Oregon State Bar the matter then becomes a public record, including the final disposition of the case by this court. It follows that this opinion must stand as a public reprimand of the accused.