Argued and submitted March 5, peremptory writ to issue July 9, 1992

## STATE ex rel Karen HOPKINS,
*Plaintiff-Relator,*

*v.*

## Ronald D. SCHENCK,
*Defendant.*

(SC S38693)

836 P2d 721

Bruce E. Anderson, La Grande, argued the cause and filed the briefs for plaintiff-relator.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for defendant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Presiding Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GRABER, J.

**GRABER, J.**

The question in this mandamus proceeding is whether the defendant judge must vacate his order denying relator's motion to disqualify him from presiding in two pending juvenile cases and, if so, whether he must grant the motion. We conclude that he must vacate his order and that he must immediately grant relator's motion. We direct that a writ issue accordingly.

In 1989, relator pleaded guilty to charges, involving one of her two children, of sodomy in the first degree and sexual abuse in the first degree. She was placed on supervised probation with several special conditions.

In August 1990, the Children's Services Division (CSD) filed a petition with respect to each of relator's children, alleging that the children were within the jurisdiction of the juvenile court because they were "dependent for care and support on a public child-caring agency that needs the services of the court in planning for [their] best interest[s]." ORS 419.476(1)(d).[1] Pursuant to an order signed September 4, 1990, relator's children are in the temporary custody of CSD.

Defendant took office as a circuit judge in January 1991. In April 1991, relator was charged with violating a term of her probation that required her to participate in a treatment program for sexual offenders. Defendant presided over that matter. On September 18, 1991, he issued a written opinion finding that relator had not willfully violated the term of her probation, but further stating:

> "The Court is convinced that insofar as her children are concerned, this young woman, will not, in the foreseeable future, be able to participate in their lives, or to have any relationship with them whatsoever.
>
> "* * * * *
>
> "CSD should move to develop a permanent plan for the placement of [relator's] children, which does not include

---

[1] The children's father has admitted to a sexual offense not involving the children and is undergoing voluntary treatment. The record indicates that he relinquished custody of the children voluntarily; "[he] feels that his children may be endangered by living with him." The record in this case does not show whether CSD has filed any proceeding to terminate the parental rights of relator or of the father.

contact with [relator]. Termination of parental rights should be pursued."

The periodic status reports filed by CSD and the Citizen Review Board in the juvenile proceedings had stated that CSD's permanent goal was to return the children to their parents.

Between September 4, 1990, and October 24, 1991, no hearings were held and no petitions were filed in the juvenile proceedings, and the court made no rulings in the juvenile proceedings. The children remained in "shelter care subject to further order" of the court. ORS 419.577(1)(e).

On Friday, October 25, 1991, these events occurred: (1) Relator received notice that a hearing was being scheduled for November 6, 1991, before defendant, on her children's juvenile dependency cases. The notice in each case advised that the hearing was scheduled for two hours for "Adjudication and Disposition." (2) Relator filed a motion and a supporting affidavit to disqualify defendant, in which she swore:

> "I believe that my children and I cannot have a fair and impartial hearing before [defendant] and request that he be disqualified from hearing or determining any issues or facts in this matter."

(3) Defendant denied the motion, writing "Denied not timely" on the bottom of the motion. Defendant does not challenge the good faith of relator's affidavit or its sufficiency under ORS 14.260(1).[2] Relator had not made any prior motion to disqualify a judge in the juvenile cases. *See* ORS 14.260(5) ("No party or attorney shall be permitted to make more than two applications in any cause, matter or proceeding under this section.").

---

[2] ORS 14.260(1) provides:

"Any party to or any attorney appearing in any cause, matter or proceeding in a circuit court may establish the belief described in ORS 14.250 by motion supported by affidavit that such party or attorney believes that such party or attorney cannot have a fair and impartial trial or hearing before such judge, and that it is made in good faith and not for the purpose of delay. No specific grounds for the belief need be alleged. Such motions shall be allowed unless the judge moved against, or the presiding judge in those counties where there is one, challenges the good faith of the affiant and sets forth the basis of such challenge. In the event of such challenge, a hearing shall be held before a disinterested judge. The burden of proof shall be on the challenging judge to establish that the motion was made in bad faith or for the purposes of delay."

On Monday, October 28, 1991, relator's counsel met with defendant concerning the denial of relator's disqualification motion, and counsel sent a confirming letter the next day. In the meeting and in the letter, counsel relied, not only on relator's affidavit filed under ORS 14.260(1), but also on the ground of actual bias. Pointing to defendant's written opinion in the probation violation case, counsel asserted that defendant was "required by the Canons of Judicial Conduct to disqualify" himself, citing Canon 3C(1).[3] Counsel noted that the district attorney, who represents the Union County Juvenile Department in the juvenile cases, joined in the request that defendant "should not, on timeliness grounds or otherwise, maintain [his] denial of the motion to disqualify [him] in this matter."

Defendant refused to postpone the November 6 hearing. He told relator's counsel that the hearing would be on the issue of disqualification and that he would preside over the hearing. On November 5, the presiding judge[4] ordered that the November 6 hearing be postponed and that the issue of disqualification be submitted to a disinterested judge. On November 6, defendant informed the parties that he intended to proceed despite the presiding judge's order and that the parties would be in contempt if they did not appear. Defendant convened a hearing on November 6, at which only CSD appeared. No action was taken, however, and the cases were continued until December 4, 1991.

---

[3] Canon 3C(1)(a) of the Code of Judicial Conduct provides:

"A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(a) the judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceedings[.]"

[4] ORS 1.002 provides for the Chief Justice's administrative authority and supervision over the courts of this state. ORS 1.003 provides for the appointment of presiding judges by the Chief Justice, and ORS 1.002(4) provides in part that "[o]ther judges of * * * a court having a presiding judge are responsible and accountable to the * * * presiding judge, and to the Chief Justice, in respect to exercise by the Chief Justice * * * or presiding judge of administrative authority and supervision." ORS 1.169 provides for the administrative consolidation of circuit and district courts pursuant to order; the administratively combined courts in each judicial district have a single presiding judge. Pursuant to an order that became effective on January 9, 1990, the district and circuit courts in Union and Wallowa Counties (the Tenth Judicial District), where defendant sits, were administratively consolidated. In October 1991, District Judge Eric W. Valentine was the presiding judge of that judicial district.

At the hearing on November 6, defendant stated that he had denied relator's October 25 motion to disqualify him on the ground that the motion was untimely under ORS 14.260(2) and (3),[5] "because the case had been before me since I took office in January of 1991." Defendant also stated:

"I — I would have liked to have heard it today and — resolved this problem because obviously I know a lot about this family and I do not feel that I am prejudiced in any manner or biased in any manner by reason of my knowledge. It just is a fact that I have knowledge about the family.

"\* \* \* \* \*

"Well, and I — I can say on the record for your — for your benefit that the Court is aware of — of substantial good reasons for these children to continue in the care and custody of Children's Services Division. At least that is the Court's knowledge at this time until something else is presented that would change my mind. And so you have — in fact have my concurrence and my backing to continue with the program and we'll try to get it formally heard and formally adjudicated as quickly as possible."

On November 14, 1991, relator's counsel wrote to defendant concerning the December 4 setting. Among other things, counsel stated:

"When I last attempted to discuss [relator's] case with you on the morning of November 6th, you openly cursed me and my methods of practicing law. I suppose that is an understandable reaction to my October 29th filing of a Judicial Fitness Commission Complaint against you. \* \* \* Under the circumstances, I believe it is even more appropriate now

---

[5] ORS 14.260(2) and (3) provide:

"(2) The affidavit shall be filed with such motion at any time prior to final determination of such cause, matter or proceedings in uncontested cases, and in contested cases before or within five days after such cause, matter or proceeding is at issue upon a question of fact or within 10 days after the assignment, appointment and qualification or election and assumption of office of another judge to preside over such cause, matter or proceeding.

"(3) No motion to disqualify a judge shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend time in the cause, matter or proceeding. No motion to disqualify a judge or a judge pro tem, assigned by the Chief Justice of the Supreme Court to serve in a county other than the county in which the judge or judge pro tem resides shall be filed more than five days after the party or attorney appearing in the cause receives notice of the assignment."

than on October 25th that you disqualify yourself from this matter."

On November 25, 1991, relator filed a petition for a writ of mandamus, seeking to require defendant to vacate his October 25 order denying her motion to disqualify him, as well as to require defendant to recuse himself or set a hearing before a different judge on the question whether defendant should be disqualified in the juvenile cases. The Union County District Attorney, representing the Union County Juvenile Department, joined in the petition. This court stayed the juvenile court proceedings and issued an alternative writ of mandamus.

■     As a threshold matter, we note that ORS 34.110 directs us to issue a writ of mandamus only in cases "where there is [no] plain, speedy and adequate remedy in the ordinary course of the law." Defendant, relator, and we agree that there is no "plain, speedy and adequate remedy in the ordinary course of the law" in this situation and that the way to request relief is through a petition for writ of mandamus. *See State ex rel Oliver v. Crookham*, 302 Or 533, 731 P2d 1018 (1987) (writ of mandamus issued where judge denied relator's motion made pursuant to ORS 14.250 to 14.270); *see also Berger v. United States*, 255 US 22, 36, 41 S Ct 230, 65 L Ed 481 (1921) (appeal is an inadequate remedy where allegedly prejudiced trial judge fails to disqualify himself, because "[appeal] comes after the trial, and if prejudice exist[s], it has worked its evil, and a judgment of it in a reviewing tribunal is precarious[,] * * * [i]t goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient").

This court may issue a writ of mandamus to "any inferior court * * * to compel the performance of an act which the law specially enjoins, as a duty resulting from an office." ORS 34.110. The relevant inquiry is whether defendant failed to perform a duty that the law required of him. If relator timely filed her motion under ORS 14.260(1) through (3),[6]

---

[6] ORS 14.260(4) provides that, "[i]n judicial districts having a population of 100,000 or more, the affidavit and motion for change of judge shall be made at the time and in the manner prescribed in ORS 14.270." The present case concerns only

the law required defendant to disqualify himself, because he concedes that he does not challenge her good faith in filing the motion. ORS 14.260(1).

ORS 14.260(2) establishes different time limits for filing motions under ORS 14.260(1), depending on whether the case is contested or uncontested. In contested cases, the party must file the affidavit "before or within five days after such cause, matter or proceeding is at issue upon a question of fact or within 10 days after the assignment, appointment and qualification or election and assumption of office of another judge to preside over such cause, matter or proceeding." In uncontested cases, the party need only file the affidavit before the "final determination of such cause, matter or proceeding[]."[7]

■ The first question, then, is whether the juvenile cases are contested or uncontested. Relator contends that they are uncontested. She assumes that the distinction between a contested and an uncontested case is whether the parties have, in fact, contested it. She asserts that she has never, in fact, contested the juvenile cases, because the cases will become contested only at the time of the hearing. Defendant contends that this court must look at the nature of the action to determine whether a case is contested or uncontested and that the nature of juvenile cases is contested. Under defendant's analysis, the juvenile cases were contested when the petitions were filed.

We conclude that the better reading of ORS 14.260(2) is that "contested" and "uncontested" refer to the posture of the specific case, rather than to the general nature of the proceeding. First, in ORS 14.260(2) the adjectives "contested" and "uncontested" modify the noun "cases." The word "cases" denotes specific actions rather than general types of proceedings. Further, ORS 14.260(2) refers to

---

ORS 14.260(1) through (3); ORS 14.260(4) and 14.270 do not apply. The population of the Tenth Judicial District is less than 100,000.

[7] ORS 14.260(3) provides the additional limitation that "[n]o motion to disqualify a judge shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend time." That subsection does not apply here, because defendant did not rule "upon any petition, demurrer or motion" in the juvenile cases before relator filed her motion to disqualify him.

*both* contested and uncontested cases as "cause[s], matter[s] or proceeding[s]." Because the phrase "cause[s], matter[s] or proceedings[s]" encompasses all types of "cases" and includes both "contested" and "uncontested" cases, it suggests that the type of proceeding was not the distinction that the legislature intended to draw between "contested" and "uncontested" cases.

The use of the term "at issue" as it relates to the timing of filing motions in contested cases under ORS 14.260(2) points to the same reading. One definition of "at issue" is as follows:

> "Whenever the parties come to a point in the pleadings which is affirmed on one side and denied on the other, they are said to be at an issue. Criminal case is 'at issue' when defendant enters a plea. [Citation omitted.]" Black's Law Dictionary 125 (6th ed 1990).

Under that definition, general classes of cases are not "at issue"; rather, particular cases are "at issue." By using the term "at issue" in ORS 14.260(2), the legislature appears to be referring to the posture of specific pending cases.

Finally, evolution of the statute also suggests the same conclusion. In 1919, when the legislature enacted the original statute, Or Laws 1919, ch 160, § 2, a party could file the affidavit to disqualify a judge at "any time before a hearing on a motion or demurrer or before commencement of trial." In 1925, the legislature amended the statute to require a party to file the motion "before or within one day after the action, suit or proceeding *is at issue upon a question of fact*, or such further time, as the court may allow." Or Laws 1925, ch 143, § 2 (emphasis added). In 1943, the statute was amended to read "before or within one day after such cause, matter or proceeding *is at issue upon a question of law or of fact*." Or Laws 1943, ch 299, § 1 (emphasis added). In 1945, the legislature inserted the distinction between contested and uncontested cases by amending the statute to set time limits like the ones in the current statute. Or Laws 1945, ch 266, § 1.[8] In 1947, the legislature again amended the statute to add the requirement that, in contested cases, the affidavit be filed

---

[8] Our research discloses no helpful legislative history on what the legislature meant by "contested" and "uncontested."

"within 10 days after *answer or objection has been filed.*" Or Laws 1947, ch 145, § 1 (emphasis added). In 1955, the legislature revised the statute to require parties to file affidavits in contested cases "before or within five days after such cause, matter or proceeding is at issue upon a question of fact." Or Laws 1955, ch 408, § 2. In the current version of the statute, the party need not file an affidavit until the case is at issue upon a question of fact, ORS 14.260(2), or until there has been a ruling on a petition, demurrer or motion in the case, ORS 14.260(3). A case that is not "at issue upon a question of fact" is not a contested case under the current statute.[9] That evolution suggests that the legislature has consistently intended a party to be able to file affidavits at any time, unless the *particular* case is put "at issue."

■    The second question is whether relator's cases were, in fact, contested. Normally, it is not hard to tell whether a case is contested. In civil cases, defendants file responsive pleadings; in criminal cases, defendants enter pleas; in many other types of proceedings, parties file objections. In juvenile dependency proceedings, however, as defendant points out, the parents do none of those things. They need not enter even an appearance before the hearing begins.

Here, relator filed no formal appearance, pleading, or objection. The juvenile cases lay dormant for over a year after the children were taken into temporary shelter care. Relator had no way of knowing when an adjudication might take place. In these unusual circumstances, where relator did not file (and did not have to file) a pleading and where the cases were inactive, it is not surprising that she did not "contest[]" the juvenile cases before she had notice that there was going to be a hearing. When relator received notice that there was going to be a hearing, she filed her motion within five days.

Accordingly, we hold that relator timely filed her motion to disqualify defendant and that defendant had a duty

_____

[9] In a contested case, the time limit for filing an affidavit begins to run when the case is put at issue upon a question of fact. ORS 14.260(2). If a case is put at issue solely on a question of law, then the time period never begins to run under ORS 14.260(2). Instead, ORS 14.260(3) covers situations where only legal issues are contested. That subsection provides that no motion to disqualify shall be made after the judge has ruled on any petition, demurrer or motion other than a motion to extend time. ORS 14.260(3) makes no distinction between contested and uncontested cases.

to grant the motion, pursuant to ORS 14.260(1), because he does not challenge relator's good faith in filing the motion. We direct that a peremptory writ issue, requiring defendant (1) to vacate his order denying relator's motion to disqualify him and (2) to grant relator's motion immediately.

Peremptory writ to issue.