Argued and submitted March 1, the accused is suspended from the practice of law for 35 days, effective on issuance of the appellate judgment as decided April 8, 1993

# In re Complaint as to the Conduct of

## REX Q. SMITH,
*Accused.*

## (OSB 90-42; SC S39426)

848 P2d 612

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar. Lia Saroyan, Assistant Disciplinary Counsel, filed a reply brief.

Rex Q. Smith, Portland, argued the cause and filed a brief *in propria persona*.

PER CURIAM

## PER CURIAM

This is a lawyer disciplinary proceeding. The Oregon State Bar charges that the accused engaged in conduct prejudicial to the administration of justice, in violation of DR 1-102 (A)(4).[1] The trial panel found the accused not guilty. The Bar sought review by this court pursuant to BR 10.1, BR 10.3, and ORS 9.536(1). We review the record *de novo*. ORS 9.536(3). The Bar has the burden of establishing ethical misconduct by clear and convincing evidence. BR 5.2. We find the accused guilty of violating DR 1-102(A)(4) and suspend him for 35 days.

### FINDINGS OF FACT

The accused was admitted to practice law in Oregon in 1974. A significant part of his practice has consisted of the represention of workers' compensation claimants. In January 1987, the accused undertook to represent Landers, a claimant who was contending that a previous work-related injury had worsened, entitling him to additional benefits.

The employer's workers' compensation insurer scheduled an independent medical examination for Landers at Kaiser Permanente Medical Center, to be conducted by the doctor who had treated Landers' original injury. The doctor was expected to prepare a written report on Landers' current condition, which would be submitted, if necessary, to the Workers' Compensation Board. The accused prepared a letter for Landers to give to the doctor at the examination. The letter stated in pertinent part:

"Landers has been ordered by [the insurer] to undergo a defense medical exam conducted by you.

"I have enclosed [reports from Landers' chiropractor].

"As you will observe, [Landers' chiropractor] has opined that Landers has had a * * * worsening of his injury * * *.

"If you agree with [Landers' chiropractor], fine.

---

[1] DR 1-102(A)(4) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(4)  Engage in conduct that is prejudicial to the administration of justice."

"If not, you need to be extremely specific and detailed
* * *.

"* * * Landers has a simple choice in that he can either have time loss income from [the insurer], or if no time loss income then risk hurting himself worse by trying to work; his other choice is simply to be destitute. Therefore, I just want you to be aware of what the consequences are if you tell [the insurer] that [Landers' chiropractor] is wrong. If any of your opinions result in Landers getting cut off of time loss and hurting himself by trying to work, then he will sue you and Kaiser."

At the time of the scheduled examination, Landers gave the letter to the doctor, who conducted a brief examination. Later, the doctor informed the insurer:

"I am withdrawing from this examination for the following reasons. When Mr. Landers came into my office to be examined, he brought with him a letter from his attorney, [the accused]. Specifically, part of the letter states that if my opinion differs from those of his present treating chiropractor then I could be sued. I refuse to put myself in jeopardy or put my Organization in jeopardy by taking this risk."

The insurer arranged for Landers to be examined by other doctors.

The Disciplinary Board trial panel concluded that, because Landers' workers' compensation claim was ultimately adjudicated despite the original doctor's withdrawal from the case, the Bar failed to show by clear and convincing evidence that the conduct of the accused "prejudiced" the administration of justice in either of the ways described by this court in *In re Haws*, 310 Or 741, 801 P2d 818 (1990). Accordingly, the trial panel found the accused not guilty of violating DR 1-102(A)(4).

## DR 1-102(A)(4)

In *In re Haws, supra*, this court established a three-part test for finding a violation of DR 1-102(A)(4), the rule proscribing conduct that is prejudicial to the administration of justice.

First, the accused must have engaged in *"conduct,"* that is, performed, or failed to perform, some act. *Id.* at 746.

Second, that conduct must have occurred in the context of the *"administration of justice,"* that is, during the course of some judicial proceeding or a matter directly related thereto. *Id.* at 746. The conduct may relate to the "procedural functioning of the proceeding" or to the "substantive interest of a party in the proceeding." *Id.* at 747.

Third, the conduct must have been *"prejudicial"* in nature — it must have caused, or had the potential to cause, harm or injury. *Id.* at 747. The amount of harm caused, or having the potential to be caused, however, must be more than minimal. *Id.* at 747-48. The court concluded that more than minimal harm can result either from "[r]epeated conduct causing some harm to the administration of justice" or from a "single act causing substantial harm to the administration of justice." *Id.* at 748.

We apply that test to the facts found here.

■ First, it is undisputed that the accused prepared, and caused to be delivered to the insurer's doctor, the letter quoted in part above. The accused thereby engaged in *"conduct."*

Second, the accused prepared the letter in the course of representing a claimant in a workers' compensation proceeding, and the letter pertained to a report to be submitted to a party in a workers' compensation case and potentially to be submitted to the Workers' Compensation Board in the course of adjudicating the claim. The performance of medical examinations by doctors for the use of parties in workers' compensation proceedings is part of the process of adjudication. The relevant conduct thus occurred in the context of the *"administration of justice."* In this case, the conduct affected the "procedural functioning of the proceeding," by causing the doctor, who was a prospective witness, to withdraw from the process of evaluating Landers' condition, thereby delaying that process. *See In re White*, 311 Or 573, 815 P2d 1257 (1991) (conduct resulting in waste of time for courts, lawyers, and litigants violated DR 1-102(A)(4)); *In re Paauwe*, 294 Or 171, 174, 654 P2d 1117 (1982) (conduct that caused delays in litigation was prejudicial to the administration of justice). In addition, the conduct affected the substantive interest of a

party to the proceeding, the insurer, by potentially denying that party evidence related to the claim.

■      Finally, we consider whether the conduct of the accused, although not "repeated," caused, or had the potential to cause, "substantial" harm to the administration of justice. The letter prepared by the accused threatened litigation if the doctor expressed a particular medical opinion in the course of the workers' compensation proceeding. That threat was improper, because what a witness says in a legal proceeding is absolutely privileged. In *Ramstead v. Morgan*, 219 Or 383, 347 P2d 594 (1959), this court held that a lawyer could not maintain an action for libel based on statements in a former client's letter to the chair of a county grievance committee of the Oregon State Bar. The court wrote:

> "The absolute immunity attaches to statements made in the course of, or incident to a judicial proceeding. And so, statements made by parties, witnesses, and affiants are included within the privilege.

> "The rule of absolute privilege is applicable not only to judicial proceedings but to quasi-judicial proceedings as well.

> "Statements made before various administrative boards and commissions have been recognized as absolutely privileged." 219 at 388 (citations omitted).

A workers' compensation proceeding to adjudicate a claim is a quasi-judicial administrative proceeding. *See* ORS 656.260 to 656.390 (procedure for obtaining compensation and recovering attorney fees). The report of an examining physician is an integral part of that proceeding. *See* ORS 656.325 (providing for independent medical examinations on request of the insurer); OAR 436-10-100(1) (the insurer may obtain independent medical examinations of the claimant). Therefore, absolute immunity applied to the doctor's report.

■      The fact that this particular workers' compensation claim was ultimately adjudicated is irrelevant. Improperly threatening a witness in a legal proceeding is substantially harmful to the administration of justice without regard to the timing or outcome of the particular case. *See* ORS 162.285 (tampering with a witness includes knowingly inducing, or attempting to induce, the witness to withhold testimony in

any official proceeding; witness tampering is a Class C felony). The conduct of the accused was, therefore, *"prejudicial." See In re Boothe*, 303 Or 643, 740 P2d 785 (1987) ("an attempt to induce a witness not to testify, even if unsuccessful, is prejudicial to the administration of justice").

We conclude that the accused violated DR 1-102 (A)(4).

## SANCTION

In deciding on the appropriate sanction, this court refers for guidance to the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards). *In re White, supra*, 311 Or at 591. ABA Standard 3.0 sets out the factors to consider in imposing sanctions: the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating or mitigating factors.

The accused violated his duty to the legal system during his pursuit of Landers' workers' compensation claim by communicating improperly with a witness in a judicial proceeding. ABA Standard 6.3.

The accused acted intentionally. We find that he had the conscious purpose of interfering with the doctor's independent medical judgment, by causing the doctor either to agree with Landers' chiropractor or to withdraw from the case. *See* ABA Standards at 7 (June 17, 1992) (a lawyer acts intentionally when he or she acts with the conscious purpose to acheive a particular result).

The accused asserts that his purpose in preparing the letter was to fulfill his "ethical duty to zealously represent" Landers and that his conduct was proper in view of Landers' constitutional right under Article I, section 8, of the Oregon Constitution, to express his concern about the consequences of the doctor's examination. Even assuming that Landers was constitutionally privileged to make the same comments and that Landers induced the accused to prepare the letter, the conduct of the accused was not justified. *See* ABA Standard 9.4(b) (agreeing to a client's demand for improper conduct is neither an aggravating nor a mitigating factor).

Under the ABA Standards, where a lawyer influences or attempts to influence a witness' testimony, the extent of the resulting injury is measured by evaluating the level of interference or potential interference with the administration of justice. *See* ABA Standards at 8 (stating that principle). In this case, the conduct of the accused potentially interfered with the timely disposition of Landers' claim and potentially interfered with the outcome of the claim, by depriving the insurer of the opinion of the doctor who had originally treated Landers.

The ABA Standards suggest that the appropriate sanction when a lawyer acts intentionally in these circumstances ranges as high as disbarment. *See* ABA Standard 6.31 (disbarment is appropriate when a lawyer intentionally tampers with a witness and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding); ABA Standard 6.32 (suspension is appropriate when a lawyer engages in communication with an individual in the legal system and the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding).

We next consider pertinent aggravating and mitigating factors.

As an aggravating factor, the accused had substantial experience in the practice of law. ABA Standard 9.22(i).

In mitigation, the accused has no prior disciplinary record, ABA Standard 9.32(a); he made a full disclosure to the trial panel of the facts and circumstances of his conduct, ABA Standard 9.32(e); and there was a delay in initiating the disciplinary proceedings, ABA Standard 9.32(j).

The mitigating factors outweigh the aggravating factor in this case. We conclude that a suspension of 35 days is the appropriate sanction.

The accused is suspended from the practice of law for 35 days, effective on issuance of the appellate judgment.