Argued and submitted November 3, 1993, accused is reprimanded September 9, 1994

## In re Complaint as to the Conduct of
## RONALD D. SCHENCK,
### *Accused.*

(OSB 90-113, 93-5; SC S40157)

879 P2d 863

Ronald D. Schenck, accused, argued the cause and filed the briefs *in propria persona.*

Robert L. Cowling, Bar Counsel, Medford, argued the cause for the Oregon State Bar. Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, filed the response for the Oregon State Bar.

Before Gillette, Presiding Justice, Van Hoomissen, Fadeley, and Unis, Justices, and Richardson,* Justice pro tempore.

PER CURIAM

Unis, J., concurred in part and dissented in part and filed an opinion.

---

* The Hon. William L. Richardson, Chief Judge, Court of Appeals, sitting by appointment pursuant to ORS 1.600.

## PER CURIAM

In this disciplinary proceeding, the Oregon State Bar (Bar) charged the accused with one violation of DR 7-104(A)(1) (communicating with a person represented by counsel)[1] and two violations of DR 7-110(B) (improper communication with a judge as to the merits of a cause)[2] of the Code of Professional Responsibility (Code). A trial panel of the Disciplinary Board found the accused guilty of violating DR 7-104(A)(1) and also found the accused guilty of one count of violating DR 7-110(B). The trial panel found the accused not guilty of violating DR 7-110(B) on the second count. The accused petitions for review, asking this court to reverse the trial panel's findings of guilt. The Bar asks this court to find the accused guilty of all three violations charged in its complaint.

The issue on review is whether the Bar has proved ethical misconduct by clear and convincing evidence. BR 5.2. This court reviews *de novo*. ORS 9.536(3); BR 10.6. We find the accused guilty of violating DR 7-104(A)(1) and guilty on one count of violating DR 7-110(B). As did the trial panel, we find the accused not guilty of the second count of violating DR 7-110(B).

### FACTS

The Bar first alleges: In 1987, while the accused was engaged in the private practice of law, he represented the

---

[1] DR 7-104(A) provides in part:

"During the course of the lawyer's representation of a client, a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation, or on directly related subjects, with a person the lawyer knows to be represented by a lawyer on that subject, or on directly related subjects, unless:

"(a) the lawyer has the prior consent of a lawyer representing such other person; [or]

"(b) the lawyer is authorized by law to do so[.]"

[2] DR 7-110(B) provides in part:

"In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending except:

"* * * * *

"(2) In writing if the lawyer promptly delivers a copy of the writing to opposing counsel[.]"

conservators of an estate regarding a dispute between the conservators and Lewis. On the conservators' behalf, he filed a civil complaint against Lewis and his wife in circuit court. Lewis was served with the complaint. Thereafter, the accused mailed directly to Lewis a document entitled "Notice to Produce,"[3] in which request was made of Lewis to provide to the accused various documents, records, and property relating to the dispute between the conservators and Lewis. The Bar's complaint further alleges that, at that time, Lewis was represented by counsel regarding the dispute with the conservators, that the accused knew when he mailed the Notice to Produce to Lewis that Lewis was represented by counsel regarding the dispute with the conservators, and that the accused did not have the prior consent of Lewis' counsel to send the Notice to Produce directly to Lewis. The Bar charges that the accused's conduct was an improper communication with a person represented by counsel in violation of DR 7-104(A)(1).

The Bar next alleges: In the same matter, on Lewis' motion, the accused was disqualified from representing the conservators, who obtained new counsel. The accused, however, was not disqualified to represent the conservators in a separate contempt proceeding that had arisen earlier in the course of the litigation between the conservators and Lewis (after the trial judge had found the conservators in contempt for violating a court order). On behalf of the conservators, the accused appealed the contempt finding. The Bar's complaint alleges that, in September 1989, the accused sent a communication on the merits of the litigation to the conservators' new counsel and a copy of that letter to two trial judges before whom the ongoing litigation had been and would continue to be conducted, but that the accused did not send or deliver a copy of that letter to Lewis' counsel. The Bar charges that the accused's conduct was an improper communication with a judge as to the merits of a cause in violation of DR 7-110(B).

After the foregoing events, the accused was elected a circuit judge in 1990. He assumed office in January 1991.

The Bar's third cause of complaint alleges: Before July 1992, the Oregon Supreme Court had under advisement

---

[3] *See* ORCP 43 (production of documents, etc.).

a mandamus proceeding in which the accused was a party by virtue of rulings that he had made as a trial judge. After this court rendered its opinion in that mandamus proceeding, the accused sent a letter concerning the mandamus proceeding directly to the justice who had authored that opinion for this court. The accused did not send a copy of his letter to the adverse party or her counsel in the mandamus proceeding. At the time that the accused sent his letter, the mandamus proceeding was still "pending" before this court. The Bar charges that the conduct by the accused was an improper *ex parte* communication with a judge as to the merits of a cause in violation of DR 7-110(B).

## THE BAR'S AUTHORITY TO PROSECUTE A JUDGE

The accused asserts two procedural defenses to the Bar's prosecution. He first questions the Bar's authority to prosecute a circuit judge for alleged violations of the Code. He argues that Article VII (Amended), section 1, of the Oregon Constitution, requires that judges be elected and restrains interference with their elected term of six years. He further argues that any prosecution of a circuit judge by the Bar, rather than by the Commission on Judicial Fitness, would be in derogation of the people's power to elect or a governor's power to appoint a judge to fill a vacancy.

ORS 9.490 provides:

"The board of governors, with the approval of the state bar given at any regular or special meeting, shall formulate rules of professional conduct, and when such rules are adopted by the Supreme Court, shall have power to enforce the same. Such rules shall be *binding upon all members of the bar*." (Emphasis added.)

Further, ORS 9.527(7) provides:

"The Supreme Court may disbar, suspend or reprimand *a member of the bar* whenever, *upon proper proceedings for that purpose*, it appears to the court that:

"* * * * *

"(7) The member has violated any of the provisions of the rules of professional conduct adopted pursuant to ORS 9.490." (Emphasis added.)

ORS 3.050 provides that "[n]o person is eligible to the office of judge of the circuit court unless the person is a member of the Oregon State Bar."

In *Jenkins v. Oregon State Bar*, 241 Or 283, 289-291, 405 P2d 525 (1965), a proceeding to determine whether this court had jurisdiction to discipline a judge for alleged violations of the Canons of Judicial Ethics, this court stated:

"We hold that rules of professional conduct, including judicial conduct, are binding upon judges.

"* * * * *

"The Canons of Judicial Ethics are just as binding upon lawyers and judges as the Rules of Professional Conduct are binding upon lawyers and judges in cases falling within the purview of those rules.

"* * * * *

"The Rules of Professional Conduct for practicing lawyers obviously were drawn with the relationship of lawyer and client foremost in the minds of the draftsmen. The Canons of Judicial Ethics obviously were drawn to cover problems likely to arise in connection with the performance of judicial duties. Neither set of rules, however, is intended to be mutually exclusive. Both may apply, in proper cases, alike to practicing lawyers and to judges."

In *In re Edwin L. Jenkins*, 244 Or 554, 419 P2d 618 (1966), a proceeding under the Canons of Judicial Ethics, this court ordered that the judge be suspended as a member of the Oregon State Bar for a period of two years for conduct financially benefiting the judge and his wife through the use of the judicial office.[4]

In *In re Piper*, 271 Or 726, 534 P2d 159 (1975), a circuit judge was prosecuted by the Commission on Judicial Fitness under the provisions of Article VII, section 8, of the Oregon Constitution, adopted in 1968, and at the same time was also prosecuted by the Oregon State Bar for violation of ORS 1.220, which forbids a judge to practice law. Both

---

[4] In prosecuting Judge Jenkins, the Oregon State Bar did not seek, by means of disciplinary proceedings, his removal from office. *Jenkins v. Oregon State Bar*, 241 Or 283, 286-87, 405 P2d 525 (1965).

proceedings arose out of the same facts. This court reprimanded the accused for his misconduct both as a judge and as a lawyer. 271 Or at 742.

In *In re Sisemore*, 271 Or 743, 534 P2d 167 (1975), this court publicly reprimanded a judge who signed probate orders for another judge who was unlawfully practicing law after he became a judge. This court explained:

> "As stated in *In re Donald W. Piper, supra*, the Oregon State Bar may properly institute disciplinary proceedings against attorneys who are judges for violations of the Rules of Professional Conduct of the Oregon State Bar." 271 Or at 746.

■  In this case, the conduct resulting in the first two charges of ethical misconduct against the accused occurred while he was engaged in the private practice of law and before he became a circuit judge in 1991. The accused cites no authority for the proposition that the Bar is restrained from bringing disciplinary proceedings against a lawyer for alleged ethical misconduct before the lawyer became a circuit judge, and we are aware of none. Indeed, as indicated, our precedents are to the contrary. On the other hand, there is no precedent directly on point concerning the authority of the Bar or this court to discipline a sitting judge under the Code for unethical acts that occurred after the judge assumed the bench. As we shall explain, however, we conclude that because of the disposition that we make in this case it is not necessary to resolve that issue.

## EQUAL PROTECTION

The accused next argues that Article I, section 20, of the Oregon Constitution, prevents his prosecution by the Bar. He argues that he has filed charges against other members of the Bar for conduct related to the same events that precipitated the charges against him in this proceeding, but that his charges of professional misconduct against other lawyers and judges have not been pressed by the Bar. The accused argues that this disparity in treatment means that the Bar has failed to provide him equal protection of the law. We find that argument unpersuasive.

We proceed in chronological order to consider the Bar's three charges against the accused on their merits.

## I. DR 7-104(A)(1)

■     The Bar charges that in 1987, the accused, while acting as a lawyer commencing litigation, mailed a Notice to Produce under ORCP 43 directly to the adverse party rather than to the lawyer with whom he had been negotiating before commencing the litigation. The accused argues that he understood that the other lawyer had not received a retainer for the litigation, but represented the other party only for pre-filing settlement negotiations, and that the other lawyer had not yet accepted the obligations of representation beyond settlement negotiations. Thus, the accused reasons, he was entitled to believe that the other lawyer was not a lawyer for the adverse party in the litigation. It follows, the accused reasons, that he is not guilty of this charge because the Bar has failed to prove that the accused knew that he was communicating with a "represented" party.

In fact, the evidence establishes — and we find — that the other lawyer represented the adverse party at the time of the communication. Moreover, the accused's acts indicate that the accused knew of that representation. The accused mailed a copy of the Notice to Produce to the other lawyer with whom he had been negotiating. That act indicates the understanding by the accused of the other lawyer's position with regard to the adverse party. The accused treated the lawyer as involved. That is sufficient indication that, in the accused's mind, the lawyer represented the adverse party whether or not a fee arrangement had been concluded between the adverse party and the other lawyer. Moreover, the accused had been writing the other lawyer about the case frequently in the weeks just before the accused mailed the Notice to Produce to the adverse party. We are satisfied from the foregoing that the knowledge element of DR 7-104(A)(1) has been met.

The accused argues that the Notice to Produce could have been served by the process server along with the summons and complaint at the direction of the accused. He argues that if the Notice to Produce had been so served no violation for "communicating with a represented party" would have occurred, just as no violation occurs when a lawyer directs that a summons and complaint be served personally on a

represented party rather than on that opposing party's lawyer.[5]

We shall assume, for purposes of this case, that the accused is correct that the Notice to Produce could have been served by a process server under ORCP 43 B. That is, we shall assume that the authorization for Notices to Produce in litigation, combined with the requirement that the notice be received by the party, would have shielded the accused from a charge of violating the rule against communicating with a represented party because that act of communication would have been authorized by law. DR 7-104(A)(1)(b). The accused, however, did not choose to proceed in that fashion. The mailing by the accused communicated with a represented party on the subject of the representation and could have had the incidental effect of emphasizing the accused's *persona* as the lawyer for the plaintiff. It was the accused who communicated in this case. The accused's argument is unpersuasive.

Given that the accused's testimony and actions indicate that he understood the adverse party was represented by the other lawyer on the general subject of the litigation at the time, the accused's act of mailing the Notice to Produce directly to the represented party violated DR 7-104(A)(1) as charged in the Bar's first cause of complaint.

## II. DR 7-110(B)

■ The accused is also charged with violating DR 7-110(B) by communicating with a circuit judge before whom an adversary proceeding of the accused's was pending. The accused sent a copy of a letter to a circuit judge who was or had been involved in, and who potentially would be involved in, the proceeding to which the contents of that letter related.[6]

The accused argues that although the judge was awaiting the resolution of an ancillary matter arising out of the litigation, the judge was not directly involved in the

---

[5] The Notice to Produce, authorized by ORCP 43, could have been served by the process server under ORCP 43 B, which states: "The request may be served * * * upon any other party with or after service of the summons on that party." The accused posits that all he did was communicate in a different fashion what might have been communicated with the represented party under ORCP 43 B.

[6] The letter was addressed to a lawyer for the plaintiffs in a case already in litigation. No copy was mailed to the defendant's lawyer.

litigation and, thus, was not the judge in the matter because the matter was not pending before him. We reject that argument. The letter was to the judge before whom the adversary proceeding was pending.

The accused also argues that the communication was not "on the merits of the cause." The accused's letter stated that further delay in disposing of the main case, to await the outcome of the ancillary proceeding, was not necessary under the law and was just an effort to force a settlement. That is a communication on the merits of the cause. A communication may concern procedure as well as substantive law and still be on the merits of the cause. The communication indicated disagreement with a judge's decision to delay the case and argued that that decision was not well founded in law. That is a comment on the merits. That the letter serves some secondary purpose, even a supposedly salutary one, does not prevent it from being a communication about the case directed to the judge before whom the proceeding was pending. We conclude that the accused is guilty of violating DR 7-110(B) as charged in the Bar's second cause of complaint.

## III.  DR 7-110(B)

The *ex parte* communication charged in the Bar's third cause of complaint arises from a case in which the accused himself was party to a mandamus proceeding in this court concerning whether, after he became a circuit judge, the accused impermissibly refused to disqualify himself on the request of a lawyer in a case pending before him.

In *In re Schenck*, 318 Or 402, 423-24, 870 P2d 185 (1994), this court considered the same facts that are alleged in the Bar's third cause of complaint against the accused here. In that proceeding under the Code of Judicial Conduct, this court stated:

"B.  *The Hopkins mandamus case.*

"After this court issued its decision in *State ex rel Hopkins v. Schenck*, [313 Or 529, 836 P2d 721 (1992)], in which the court directed that a peremptory writ issue, the Judge sent a letter to the justice who was the author of the court's opinion. The letter was received at the court on July 24, 1992. Copies of the letter were not sent to the other party or

counsel. The letter was signed by the Judge as 'R.D. Schenck Circuit Judge.'

"The letter stated that the Judge's 'only gripe' concerning this court's opinion was with what the Judge labeled a 'gratuitous' quotation of a statement by [a lawyer in the underlying proceeding]. The letter asserted that [the lawyer's] statement was untrue and that the Judge had never had an opportunity to challenge it in the mandamus case. At the time the Judge's letter was received, the time for a petition for reconsideration of this court's mandamus decision had not yet expired.

"The Judge's letter thus was an *ex parte* communication concerning a pending proceeding. It was initiated by the Judge in his capacity as a defendant in a mandamus action. We conclude that sending the letter during the formal pendency of the mandamus case violated Canon 3A(4). In this instance, however, we do not conclude that the Judge committed a 'wilful violation' of Canon 3A(4).

"There is not clear and convincing evidence that the Judge was aware of circumstances that made the *ex parte* rule apply on these facts, as is required for a 'wilful violation' under *In re Gustafson,* [305 Or 655, 660, 756 P2d 21 (1988)]. Specifically, the record does not establish by clear and convincing evidence that the Judge was aware that the *mandamus* case was still 'pending' for purposes of the *ex parte* rule, after this court had issued its decision and had ordered a peremptory writ to issue, but before the period for a petition for reconsideration had expired."

Accepting everything asserted in the letter to be true, there still would have been no reason to reconsider any conclusion that we had reached in applying the Code of Judicial Conduct. The trial panel concluded and, on *de novo* review we agree, that the accused's letter was not a communication "as to the merits of the cause" within the meaning of DR 7-110(B). We find the accused not guilty of this charge.

## SANCTION

In deciding on an appropriate sanction, this court looks to the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). *In re Smith,* 316 Or 55, 61, 848 P2d 612 (1993). ABA Standards Part III(C) sets out the factors to be considered in imposing sanctions:

1. *The duty violated.*

In this case, the accused violated his duties owed to the legal system to refrain from improper communications with individuals within the legal system. ABA Standard 6.3.

2. *The lawyer's mental state.*

The most culpable mental state is intent. Certainly, the accused as a lawyer intended to communicate with a party he had every reason to believe was represented. As a lawyer, he also intended to communicate with a trial judge about litigation before that judge.

The accused now suggests that his conduct was merely negligent based on his interpretation of the disciplinary rules. Upon examination of the evidence, including the accused's animosity toward key players in each of the charges as to which he has been found guilty and his apparent willingness to act under a notion of what he believes the disciplinary rules *should* allow rather than what they do allow, we conclude that the accused was acting with intent or, at a minimum, with knowledge of "the nature or attendant circumstances of the conduct." ABA Standards, Part III, Definitions (defining "knowledge").

3. *The actual or potential injury caused by the misconduct.*

Injury can be either actual or potential under the ABA Standards. *In re Williams*, 314 Or 530, 547, 840 P2d 1280 (1992). No actual injury was suffered in this case, but potential for injury was significant.

4. *The existence of aggravating or mitigating factors.*

By way of aggravation, this case involves two offenses. The accused has received one prior disciplinary sanction — a reprimand. Furthermore, the accused has had substantial experience in the practice of law. Finally, the accused refuses to recognize even the possibility that either of his acts were wrongful. *See* ABA Standards 9.22(a), (c), (d), (g), and (i). Mitigating factors include the fact that the accused's misconduct does not bear on the accused's trustworthiness; the accused has cooperated with the Bar; and the

offenses are remote in time. ABA Standards 9.32(b), (e), and (m).

The Bar argues that some period of suspension is appropriate. As a general proposition, we agree. *See, e.g., In re Williams, supra,* (lawyer suspended for 63 days for, *inter alia,* making direct contact with a represented party); *In re Lewelling,* 296 Or 702, 678 P2d 1229 (1984) (similar charge; 60-day suspension); *but see In re Burrows,* 291 Or 135, 629 P2d 820 (1981) (violations of two DRs; reprimand only). However, an additional consideration leads us to conclude that a reprimand is appropriate in this instance.

This case was argued and submitted at the same time as the judicial fitness proceeding, *In re Schenck, supra.* In that case, this court suspended the accused from his judicial office for a period of 45 days. 318 Or at 443. Had we been able to decide the cases simultaneously, we do not believe that we would have imposed a greater period of suspension than the one that we there imposed. It would be unfair, we think, to add a second period of suspension now. We therefore reprimand the accused.

The accused is reprimanded.

**UNIS, J.,** concurring in part and dissenting in part.

I join in the court's opinion in all respects, except the finding that the accused violated DR 7-104(A)(1). To find a violation of DR 7-104(A)(1), the court must find by clear and convincing evidence that the accused (1) communicated or caused to communicate (2) with a person represented by counsel (3) whom the accused knows to be represented by counsel (4) on the subject of the representation or directly related subjects. In my view, the Bar has failed to establish by clear and convincing evidence that the accused violated DR 7-104(A)(1).